[Civ. No. 4000.  Second Appellate District, Division Two.—July 18, 1922.]

## A. H. MOORE, Petitioner, v. THE CITY COUNCIL OF THE CITY OF LOS ANGELES et al., Respondents.

[1] MUNICIPAL CORPORATIONS — AMENDMENTS TO FREEHOLDERS' CHARTER—TIME OF ADVERTISEMENT—CONSTITUTIONAL LAW.—The legislative body of a city having a freeholders' charter is not required, under section 8 of article XI of the constitution, to advertise a proposed amendment to the charter within fifteen days after the filing of a petition by electors for the submission of such amendment to a vote of the city electorate, since the element of time was not intended to be included in the word "manner" as that word is used in such section requiring that proposed amendments to a charter shall be advertised "in the same manner" that is proposed for the advertisement of a proposed charter.

PROCEEDING in Mandamus to compel the advertising of a proposed amendment to a city charter.  Writ denied.

The facts are stated in the opinion of the court.

o

Jones & Weller for Petitioner.

Jess E. Stephens, Lucius P. Green and Charles B. Mac-Coy for Respondents.

FINLAYSON, P. J.—This is a proceeding in *mandamus* to compel respondents to advertise, within fifteen days from July 5, 1922, a proposed amendment to the charter of the city of Los Angeles. On application made to this court in the first instance, an alternative writ of mandate was issued, and thereafter respondents appeared and filed their answer.

From the uncontroverted averments of the petition and the stipulations of the parties, the following facts are made to appear: On July 5, 1922, a petition, signed by more than fifteen per cent of the registered electors of the city of Los Angeles, requesting the submission of an amendment to the city charter, was filed with the city council and the signatures thereto were duly certified by the city clerk. On the same day, at a regular meeting of the city council, a motion was made to advertise such proposed amendment within fifteen days, but, for lack of the requisite number of votes, the motion failed to carry. Thereafter, on July 13, 1922, at a regular meeting, the city council adopted a resolution whereby it declared it to be its purpose and intention to submit the proposed amendment to the electors of the city not later than the general election to be held next November. Petitioner claims that by the provisions of section 8 of article XI of our state constitution, presently to be quoted, it is the bounden duty of the city council to advertise the proposed amendment not later than fifteen days after the filing of the petition by the electors, that is to say, within fifteen days after July 5, 1922.

Section 8 of article XI of the constitution, in so far as it is necessary to an understanding of the question, reads: "Any city or city and county . . . may form a charter for its own government, consistent with and subject to this constitution. . . . Any such charter shall be framed by a board of fifteen freeholders chosen by the electors of such city at any general or special election. . . . The charter so framed shall be signed by a majority of the board of freeholders and filed in the office of the clerk of the legislative body of said city. The legislative body of said city shall, *within*

*fifteen days after such filing* [italics ours] cause such charter to be published once in the official paper of said city (or in case there be no such paper, in a paper of general circulation) ; and shall cause copies of such charter to be printed in convenient pamphlet form, and shall, until the date fixed for the election upon such charter, advertise in one or more papers of general circulation published in said city a notice that such copies may be had upon application therefor.   Such charter shall be submitted to the electors of such city at a date to be fixed by the board of freeholders, before such filing and designated on such charter, either at a special election held not less than sixty days from the completion of the publication of such charter as above provided, or at the general election next following the expiration of said sixty days. . . . The charter of any county or city and county may be amended by proposals therefor submitted by the legislative body of the city on its own motion or on petition signed by fifteen per cent of the registered electors, or both.   Such proposals shall be submitted to the electors only during the six months next preceding a regular session of the legislature or thereafter and before the final adjournment of that session and at either a special election called for that purpose or at any general or special election.   Petitions for the submission of any amendment shall be filed with the legislative body of the city or city and county not less than sixty days prior to the general election next preceding a regular session of the legislature.   The signatures on such petitions shall be verified by the authority having charge of the registration records of such city or city and county, and the expenses of such verification shall be provided by the legislative body thereof.   If such petitions have a sufficient number of signatures the legislative body of the city or city and county shall so submit the amendment or amendments so proposed to the electors.   Amendments proposed by the legislative body and amendments proposed by petition of the electors may be submitted at the same election.   The amendments so submitted shall be advertised *in the same manner as herein provided for the advertisement of a proposed charter* [italics ours], and the election thereon held at a date to be fixed by the legislative body of such city, not less than forty and not more than sixty days after the completion of

the advertising in the official paper. If a majority of the qualified voters voting on any such amendment vote in favor thereof it shall be deemed ratified, and shall be submitted to the legislature at the regular session next following such election; and approved or rejected without power of alteration in the same manner as herein provided for the approval or rejection of a charter.''

As will be observed, it is provided by the constitution that the legislative body of any city for which a proposed charter has been prepared by a board of freeholders and filed with the clerk shall, ''within fifteen days after such filing,'' cause the same to be published once in the official paper of the city, or in a paper of general circulation if there be no official paper, and shall likewise cause copies of such charter to be printed in convenient pamphlet form and give notice by advertising in one or more papers of general circulation that such copies may be had upon application. And it will be recalled that it is further provided that all proposed *amendments* to any such charter shall be advertised ''in the same manner as herein provided for the advertisement of a proposed charter.'' Whether, as petitioner claims, it is the duty of the legislative body of a city having a freeholders' charter to advertise a proposed amendment to the charter within fifteen days after the filing of a petition by electors for the submission of such amendment, depends upon the meaning to be given to the word ''manner,'' as that word is used in the provision which declares that all proposed charter amendments shall be advertised ''in the same *manner* as herein provided for the advertisement of a proposed charter.'' It is urged by petitioner that the phrase ''in the same manner'' refers not only to the way or mode whereby the advertising must be done, but also the the *time* within which it must be done.

Whether the word ''manner,'' or the phrase ''in the same manner,'' includes the element of time, has been answered by the courts both in the affirmative and in the negative. The supreme court of Nevada, in *State* v. *Eureka etc. M. Co.*, 8 Nev. 15, held, without discussion, that the word ''manner,'' in the statute under consideration in that case, did not mean time. In *United States* v. *Morris*, Fed. Cas. No. 15,815, the word was also construed by the court as

not including time.  (See, also, *Bankers' Life Ins. Co.* v. *Robbins*, 59 Neb. 170 [80 N. W. 484].)  On the other hand, *Harris* v. *Doherty*, 119 Mass. 142, and *State* v. *McClure*, 91 Wis. 313 [64 N. W. 992], are cases in which the word "manner" was construed as including the element of time.

We think that the question is, in every case, one of intent, and that the true rule may be formulated substantially as follows: Whether the word "manner" shall be construed as including not only the way or mode of doing a thing, but also the time of doing it, depends upon the intention of the lawmakers, to be gathered from the context; that is, the "manner" of doing a thing and the "time" of doing it are distinct things, and ordinarily the word "manner" will not be construed as including the element of "time" unless it shall appear from the context that the lawmakers intended that it should.  Thus, in *State* v. *McClure, supra,* the supreme court of Wisconsin said: "The word 'manner' in a statute may undoubtedly include 'time,' if such seems to have been the intent of the lawmakers."  And in *Porter* v. *Brook*, 21 Okl. 885 [97 Pac. 645], a well-considered case, the Oklahoma supreme court used this language: "We think the language quoted from *United States* v. *Morris, supra,* to the effect that the 'manner' of doing a thing and the 'time' of doing it are distinct things, but that 'manner' *may* embrace 'time' if such was the intention of Congress, states the correct rule."  (Italics ours.)

It must be held, therefore, that the word "manner," in the phrase "shall be advertised in the same manner as herein provided for the advertisement of a proposed charter," does not include the element of time, but refers only to the mode or way of advertising a proposed amendment to a freeholders' charter, unless we can see from the context that the time, as well as the mode of advertising, was intended to be included in the word "manner."

Petitioner argues that it was intended that the word "manner," as here used, should include the time as well as the mode or way of advertising, because, as he claims, if the word were not construed as including the time of advertising it would be possible for any city council to frustrate the will of the electors by indefinitely postponing the advertisement of a proposed charter amendment, and thus prevent the holding of any election thereon.  We do not

think the dilemma thus suggested by petitioner will ensue if the word "manner" be construed as meaning only the way or mode, and not the time of advertising. The embarrassing possibility suggested by petitioner's argument is based upon the assumption that if the constitution does not make it obligatory to advertise a proposed charter amendment within fifteen days from the filing of the petition for its submission, then no time is prescribed by the constitution for advertising a charter amendment proposed by electors.

An analysis of the provisions of the constitution will show the fallacy of petitioner's contention. If the constitution does not require the city council to advertise within fifteen days from the filing of a petition for a proposed charter amendment, then it is true that no definite time for advertising is *directly* enjoined upon the council. But even so, it still remains that, *indirectly,* a period for advertising is prescribed by the constitution, although that period may cover a somewhat wide range of time. It is expressly declared by section 8 of article XI that a proposed amendment to a city charter "shall be submitted to the electors only during the six months next preceding a regular session of the legislature or thereafter and before the final adjournment of that session"; that petitions for the submission of any amendment shall be filed "not less than sixty days prior to the general election next preceding a regular session of the legislature"; and that the election on such proposed amendment shall be held "at a date to be fixed by the legislative body of such city, not less than forty and not more than sixty days after the completion of the advertising in the official paper." We are satisfied that the declaration that proposed amendments "shall be submitted to the electors only during the six months next preceding a regular session of the legislature or thereafter and before the final adjournment of that session" is the equivalent of a mandatory requirement making it the duty of the city council to submit all proposed amendments to the electors at some time during the six months preceding the regular session of the legislature next succeeding the filing of the petitions, or before the final adjournment of that session. And since the council must fix the date of the election "not less than forty and not more than sixty

days after the completion of the advertising,'' it follows that, indirectly, the city council is commanded to advertise the proposed amendments at some time during a period having a fixed beginning and fixed ending, and that, therefore, it is not necessary to construe the word ''manner'' as including the element of time in order to escape the dilemma suggested by petitioner.

Another reason why this word ''manner'' should not be construed to mean ''time'' is that if it were so construed the time consumed in verifying the signature to a petition for the submission of a proposed charter amendment might exceed the fifteen days within which, according to petitioner's claim, the proposed amendment should be advertised. When a freeholders' charter is to be submitted to a vote of the electors, the constitution fixes a definite point of time from which to reckon the fifteen days within which such charter is to be advertised. Not so, however, with respect to charter amendments. That is to say, the constitution declares that a charter prepared by a board of freeholders must be advertised ''within fifteen days after such filing'' of the charter in the office of the clerk. No checking of names or verifying of signatures is required where a complete charter is to be submitted for ratification. It comes from the hands of the freeholders ready for advertising. But where an amendment to the charter is proposed by fifteen per cent of the electors of a city, the signatures on the petitions for the amendment must be verified by the person having charge of the registration records of the city, who, in the instant case, is the city clerk. In the very nature of things, such verification must take some time, and, mayhap, considerable time. It is even conceivable that the time required for that purpose may, in some cases, consume more than fifteen days. If it should take more than that length of time to verify the signatures to a petition, and if the word ''manner,'' as here used, were construed as including the element of time, so that the advertising of any proposed charter amendment would have to be done within fifteen days after the filing of the petition for the submission of the amendment, it is possible that it would be a physical impossibility to comply with the constitutional mandate to advertise the proposed amendment within fifteen days from the filing of the petition.

Finally, there is, as we think, a conclusive reason why it must be held that the word "manner," as used in the phrase "shall be advertised in the same manner as herein provided for the advertisement of a proposed charter," was not intended to include the time for advertising proposed charter amendments. If it were necessary to advertise a charter amendment within fifteen days from the filing of the petition for its submission to the electors a case might readily arise where the council would either have to ignore the constitutional mandate to call an election "not less than forty and not more than sixty days after the completion of the advertising," or else violate the injunction not to submit the proposed amendment to a vote prior to six months next preceding a regular session of the legislature. As we have seen, proposed amendments to a charter can be submitted to the electors "only during the six months next preceding a regular session of the legislature or thereafter and before the final adjournment of that session." But although an election upon a proposed charter amendment may not be held before the commencement of the period of time thus definitely fixed by the constitution, petitions for such amendments, signed by fifteen per cent of the registered electors, may be filed with the legislative body of the city at any time prior to the period thus fixed by the constitution as that within which proposed charter amendments may be submitted to a vote. The sole limitation upon the time for filing petitions for charter amendments is the requirement that they must be filed "not *less* than sixty days prior to the general election next preceding a regular session of the legislature." A hypothetical, concrete case will best serve to bring out the force of the point that if petitioner's construction of the constitutional provision in question were adopted the legislative body of a city might be confronted with a situation where it would be impossible for it to fix the time for an election in compliance with the constitutional mandate. Let us suppose, for example, that a petition for an amendment to a city charter, signed by fifteen per cent of the registered electors, is filed in the month of February of a year in which a general election is to be held. In that case, if it were the duty of the city council to advertise such proposed amendment within fifteen days after the filing of the

petition, then the amendment would have to be submitted to vote not later than the month of April, if the council complied with the constitutional mandate to call an election on all proposed charter amendments "not less than forty and not more than sixty days after the completion of the advertising in the official paper." But the election could not be held in the month of April without violating the constitutional requirement that all proposed amendments shall be submitted to the electors of the city "only during the six months next preceding a regular session of the legislature or thereafter and before the final adjournment of that session."

[1] For the foregoing reasons we conclude that it was not intended that the element of time should be included in the word "manner," as that word is used in the constitutional requirement that proposed amendments to a charter shall be advertised "in the same manner" that is provided for the advertisement of a proposed charter, and that, therefore, respondents are not obligated to advertise the amendment in question within fifteen days after the filing of the petition for its submission to a vote of the city electorate.

The alternative writ of mandate heretofore issued is discharged, and the application for a peremptory writ of mandate is denied.

Works, J., and Craig, J., concurred.