[L. A. No. 8888. In Bank.—December 1, 1925.]

## CHARLES D. WALLACE, Petitioner, v. H. A. PAYNE, as County Auditor, etc., Respondent.

[1] STATUTORY CONSTRUCTION—WORDS AND PHRASES—INTENT.—In the interpretation of particular words, phrases, or clauses in a statute or a constitution, the entire substance of the instrument or that portion thereof which has relation to the subject matter under review should be looked to to determine the scope and purpose of the particular provision of which such words, phrases, or clauses form a part.

[2] CONSTITUTIONAL LAW—SECTION 8, ARTICLE XI, OF THE CONSTITUTION—ADOPTION OF CHARTERS—TIME FOR STEPS.—It was the intent of the framers of section 8 of article XI of the constitution that the procedure to be followed by cities or cities and counties in the formulation and final approval of their charters should embrace particular limitations as to the time within which the various steps were to be taken in the preparation and submission of original charters to the voters of the municipality and to the legislature for final ratification; and it was the intent that such procedure should apply to proceedings for the amendment of a charter.

[3] ID.—CHARTER AMENDMENTS—SUBMISSION TO LEGISLATURE—TIME. Under section 8 of article XI of the constitution, charter amendments, if framed and adopted by the electors of a city or city and county during a pending regular session of the legislature, may be submitted to the legislature then in session for ratification.

[4] MUNICIPAL CORPORATIONS — CHARTER OF LONG BEACH — MUNICIPAL COURTS.—By the amendment of the eighteenth day of April, 1925, to the charter of the city of Long Beach, which provided for the establishment of a municipal court in said city upon the going into effect of the act of the legislature providing for the establishment of municipal courts in cities of its population, a municipal court was established in said city as of the date of the ratification by the legislature of said charter amendment.

[5] ID.—MUNICIPAL JUDGES—NUMBER—APPOINTMENT.—A city of the second and a half class, under the act of 1925 (Stats. 1925, pp. 648–652), is entitled to five judges of its municipal court; but justices of the peace of townships lying partly within and partly without charter cities entitled to establish municipal courts do not become judges of such courts by reason of their establishment, as such justices of the peace retain their offices and jurisdiction in their townships outside such cities.

1.  See 23 Cal. Jur. 760; 25 R. C. L. 1006.
3.  See 18 Cal. Jur. 773.

[6] ID.—VACANCIES IN COURT.—Under section 11 of article VI of the constitution, upon the establishment of municipal courts in a municipality and until the first election and qualification of the judge or judges thereof, where there are not enough judges or justices of the peace who are qualified to become judges of the municipal court, there are vacancies in the positions of said judgeships which may be filled by appointment of the Governor.

[7] ID. — VACANCY IN JUDGESHIPS — SECTIONS 996, 998, POLITICAL CODE—CONSTRUCTION.—Section 996 of the Political Code, providing when an office becomes vacant, and section 998 of said code, providing when the Governor may fill a vacancy in office, do not apply to offices which from the time of their creation are without incumbents.

[8] ID.—DEFINITION OF VACANCY.—The term "vacancy" has a broader meaning than merely that of a hiatus in incumbency; it means with relation to an office a state of being unoccupied.

[9] ID.—VACANCY IN COURT—POWER OF APPOINTMENT BY GOVERNOR.—Immediately upon the establishment of a municipal court in the city of Long Beach and of the occurrence of a condition whereby there were not a sufficient number of judges of inferior courts therein qualified to fill the five positions provided for cities of that class, vacancies arose in the offices of judge of said court, which the Governor was authorized to fill by appointment under section 17 of the act of 1925 (Stats. 1925, pp. 648–652).

---

(1) 12 C. J., p. 707, n. 35; 36 Cyc., p. 1128, n. 54, p. 1131, n. 75. (2) 28 Cyc., p. 242, n. 93. (3) 28 Cyc., p. 244, n. 1 New. (4) 15 C. J., p. 985, n. 41 New; 28 Cyc., p. 238, n. 70. (5) 33 C. J., p. 931, n. 5, 16; 35 C. J., p. 456, n. 86 New. (6) 33 C. J., p. 949, n. 93. (7) 33 C. J., p. 948, n. 66. (8) 39 Cyc., p. 1102, n. 39. . (9) 33 C. J., p. 947, n. 30, p. 948, n. 64, 66, p. 949, n. 93.

APPLICATION for a Writ of Mandate to compel an Auditor to audit a demand for the salary of a Judge of a Municipal Court. Writ granted.

The facts are stated in the opinion of the court.

Wm. M. Morse, Jr., for Petitioner.

Edward T. Bishop, County Counsel, R. C. McAllister, Deputy County Counsel, and W. Sumner Holbrook, Jr., Deputy County Counsel, for Respondent.

---

7. See 21 Cal. Jur. 853; 22 R. C. L. 438.
8. See 21 Cal. Jur. 851; 22 R. C. L. 437.

RICHARDS, J.—The petitioner herein applies for a writ of mandate to be directed to the respondent in his capacity as county auditor of the county of Los Angeles, commanding him to audit and approve the petitioner's claim and demand for the sum of $451.61, alleged to be due petitioner as his salary as judge of the municipal court of the city of Long Beach for the period between August 3, 1925, and August 31, 1925, inclusive. The particular facts upon which said application is based and is resisted are embraced in the stipulation of the parties hereto as to the facts of the case, which is in substance as follows: On the first day of August, 1925, the Governor of the state of California appointed and commissioned the petitioner herein a judge of the municipal court of the city of Long Beach, who, on August 3, 1925, took the oath of office as such judge of said court and thereupon assumed to be and act as such judge. That the city of Long Beach is a municipal corporation duly organized and existing in the county of Los Angeles, state of California, and that said municipal corporation is governed under and by a charter duly formed and effected in accordance with the provisions of the constitution of the state of California. That said municipal corporation had a population, at the taking of the last federal census, of 55,593 inhabitants. That amendment No. 35 of the charter of the city of Long Beach, section 249a [Stats. 1925, p. 1349], was submitted to the qualified voters of the city of Long Beach, at a special municipal election held in the city of Long Beach on the eighth day of April, 1925, and at such special municipal election a majority of the qualified voters of the said city of Long Beach voted thereon in favor of said amendment No. 35 of the charter of the said city of Long Beach, and duly ratified the same. That at the time said municipal election was held the legislature of the state of California was in session, and continued in session some time subsequent thereto, and that said amendment was submitted to the legislature then in regular session, and the same was approved as a whole, without amendment or alteration, by said legislature on the eighteenth day of April, 1925, and that all other necessary acts precedent to the adoption of amendment No. 35 of the said charter of the said city of Long Beach were, and each of them was, performed in pursuance of the provisions of law pertaining thereto. That the charter of the said city

of Long Beach, as thus amended on the eighteenth day of April, 1925, provides as follows:

"Municipal Court, Section 249a.

"When this amendment takes effect as hereinafter provided there shall be established *ipso facto* in the city of Long Beach, a municipal court as contemplated by sections 1, 5, 11, 12, 14, 18, 23 and 24 of Article VI of the constitution of the state of California as amended in 1924, to exist and be maintained under and in accordance with the provisions of the act of the legislature of the state of California hereinafter referred to. If the legislature of the state of California in its 46th session adopted an act applicable to the city of Long Beach in accordance with the said constitutional provision providing by general laws for the constitution, regulation, government and procedure of municipal courts, for the jurisdiction thereof and for the establishment of municipal courts in cities or cities and counties governed under charters framed and adopted under the authority of said constitution and such act becomes effective, then upon the effective date of such act this amendment shall become effective; otherwise this amendment shall not become operative or effective for any purpose."

That the city of Long Beach is a city of the second and a half class; that the salary of the judges of the municipal court of a city of the second and a half class is fixed by law at the sum of $6,000 per annum, payable in equal monthly installments, and that the salary of a judge, duly appointed and sitting in said court on the 3d of August, 1925, to and including the thirty-first day of August, 1925, would be the sum of $451.61. That respondent H. A. Payne is the duly appointed, qualified, and acting county auditor of the county of Los Angeles.

The two questions which are thus presented to this court for decision are these: First, was a municipal court created and established on July 24, 1925, in the city of Long Beach through the adoption and ratification of the aforesaid amendment to its charter in the manner above set forth? Second, assuming that said municipal court was thus duly created and established within said city of Long Beach, did a vacancy exist in the office of judge of said municipal court which the Governor of the state of California was on August 1, 1925, empowered to fill by the appointment of the petitioner to such judicial office?

The constitution of the state of California provides the method whereby chartered municipalities may accomplish the amendment of their charters. Section 8 of article XI of the constitution, after providing the method by which cities and cities and counties may create and procure the ratification by the legislature of their charters, proceeds to designate how such charters may be amended. That portion thereof which so provides reads, in part, as follows: "The charter of any city or city and county may be amended by proposals therefor submitted by the legislative body of the city on its own motion or on petition signed by fifteen per cent of the registered electors, or both. Such proposals shall be submitted to the electors only during the six months next preceding a regular session of the legislature or thereafter and before the final adjournment of that session and at either a special election called for that purpose or at any general or special election." The section then proceeds to specify the method for the preparation and submission of the proposed amendment to the voters of the municipality and for the election to be held therein for the adoption or rejection thereof. The section then proceeds as follows: "If a majority of the qualified voters voting on any such amendment vote in favor thereof it shall be deemed ratified and shall be submitted to the legislature at the regular session next following such election, and approved or rejected without power of alteration in the same manner as herein provided for the approval or rejection of the charter."

The first question presented for our determination in this case revolves around the interpretation to be given to the last above-quoted provision in said section of the constitution. It is the contention of the respondent herein that the clause therein providing that such amendment when ratified by the voters of the municipality "shall be submitted to the legislature at the regular session next following such election" must be held to refer not to a session of the legislature which may be pending during the period provided for the formulation and adoption of such amendment by the municipality and the voters thereof, but be held to refer to the next subsequent regular session of the legislature to convene and to be held at a time after the occurrence of the municipal election at which such amendment was presented for ratification by the voters thereat. We are unable to give

to said clause in said section of the constitution the inter-
pretation contended for by the respondent herein. [1] It
is a cardinal rule to be applied to the interpretation of par-
ticular words, phrases, or clauses in a statute or a consti-
tution that the entire substance of the instrument or of that
portion thereof which has relation to the subject under
review should be looked to in order to determine the scope
and purpose of the particular provision therein of which
such words, phrases, or clauses form a part; and in order
also to determine the particular intent of the framers of
the instrument in that portion thereof wherein such words,
phrases, or clauses appear. [2] Applying this rule of in-
terpretation first to the entire substance of section 8 of article
XI of the constitution it would seem to have been the pur-
pose of the framers thereof that the procedure to be followed
by cities or cities and counties in the formulation and final
approval of their charters was one embracing particular
limitations as to the time within which the various steps were
to be taken in the course of the preparation and submission
of such original charters to the voters of the municipality
and to the legislature for final ratification. When a proper
petition is presented by the electors of a city or city and
county desiring to have a board of freeholders chosen for
the framing of such charter the section requires that the
election for the choice of such freeholders shall be called and
held not less than thirty nor more than sixty days from
the filing of such petition; and when such board of free-
holders have been thus chosen it is provided that they shall
prepare and propose such charter within 120 days after the
result of their election is declared; and when such proposed
charter is presented and filed the legislative body of such
municipality must submit the same to its electors at the next
special or general election; and if the majority of such elec-
tors then vote for its adoption such charter shall be submitted
to the legislature, *if then in session,* or at the next regular
or special session thereof; and if ratified thereat it shall
forthwith become the organic law of the city or city and
county adopting the same. These several provisions of the
section at large are evidently aimed at requiring a degree
of expedition in the preparation and adoption of original
charters to the end that when the electors of a municipality
conclude to be governed by a charter their resolution so

to do may become speedily effective. When we come to consider the succeeding portions of said section relative to the amendment of charters we find the same plan and purpose persisting. It is therein provided that proposals for such amendments can only be submitted to the electors of the municipality *"during the six months next preceding a regular session of the legislature,* or *thereafter and before the final adjournment of that session"*; that the procedure for the adoption of the amendment by the electors shall have the same expedition as that required in the adoption of original charters. Then follows a provision that when a majority of the qualified voters voting upon such amendment shall have favored the same it "shall be submitted to the legislature at the regular session next following such election." [3] When this last-quoted provision is read in the light of the general plan and purpose as disclosed in the section read as a whole to the effect that charters and amendments to charters shall move from their inception to their approval with defined expedition; and when we consider said last-quoted provision in connection with the preceding clause in said section, which provides for the period within the limitations of which charter amendments must be submitted to and voted upon by the electors, viz.: "During the six months next preceding a regular session of the legislature, *or thereafter and before the final adjournment of that session,"* it becomes reasonably apparent that it was the intent of the framers of these portions of said section of the constitution that charter amendments, if framed and adopted by the electors of a city or city and county during a pending regular session of the legislature, might be submitted to that portion of said session thereof which next followed after the said amendments, permissively adopted during such session, were ready for presentation for ratification before such regular session of the legislature adjourned. Such an interpretation would be in entire harmony with the spirit and purpose of the entire section, which evidently contemplated that when charters and charter amendments had reached the point of adoption by the electors of a municipality they should not lie inoperative and ineffective for the two years intervening between successive sessions of the legislature. Such an interpretation would also be in accord with the statutory policy that when cities and cities and

197 Cal.—35

counties have once adopted charters, and when they discover that such charters are defective in any particular or are inadequate for the present needs or growth of the municipality, and should be amended, such amendment in order to be remedial should be facilitated rather than unreasonably delayed in its adoption. We can perceive no reason why the framers of this section of the constitution should have provided that original charters might be submitted for ratification to the legislature in session at the time of their adoption by the electors of the municipality, but that amendments thereto must lie over until a later session of the legislature should come into being. If the foregoing views with respect to the meaning to be given to section 8 of article XI of the constitution require the aid of cotemporaneous interpretation it will find such support in the legislative history of charter amendments presented, adopted, and ratified during the twelve years which have elapsed since said section in its present form became a part of the constitution, many of which amendments have been prepared and submitted to the electors of a goodly number of the municipalities of this state during the progress of legislative sessions and have been presented to and ratified by then pending sessions of the legislature. It would work infinite injury to now adopt a different interpretation than that which has been so uniformly accepted and given effect by the leading municipalities of this commonwealth during the past ten years. [4] We are, therefore, of the opinion that the amendment to the charter of the city of Long Beach above quoted and which provided for the establishment of a municipal court in said city of even date with the going into effect of the act of the legislature providing for the establishment of municipal courts in cities of its population was regularly adopted and duly ratified by the legislature and that the same has been, since July 24, 1925, and still is in full force and effect; and that in pursuance thereof a municipal court was duly established in the said city of Long Beach upon and after said date.

[5] The second question presented by this proceeding is as to whether such a vacancy existed in the office of judge of said municipal court on and after said July 24, 1925, as the Governor of this state was empowered to fill by the appointment of the petitioner herein to such office on the

first day of August, 1925. This question involves first a determination as to whether the several positions of judge of said municipal court provided for cities of the class in which Long Beach comes by virtue of its population had already been filled by operation of law. The city of Long Beach is a city of the second and a half class and as such, under the provisions of the act of the legislature of 1925 (Stats. 1925, pp. 648–652), is entitled to five judges of its municipal court. The effect of the decision of this court in the case of *Bakkenson* v. *Superior Court, ante,* p. 504 [241 Pac. 874], is to so interpret the constitutional amendment providing for the creation of municipal courts as to hold that justices of the peace in townships lying partly within and partly without chartered cities entitled to establish and establishing municipal courts retain their offices and jurisdiction in and over those portions of such townships as lie without the territorial boundaries of such cities at the time of the establishment of such courts therein, and hence do not become by virtue of such amendment or of the statute above referred to judges of such municipal courts. In the case of *Helwig* v. *Payne, ante,* p. 524 [241 Pac. 884], we have held the petitioner therein disqualified to become as of the date of July 24, 1925, a judge of the municipal court of Long Beach. By this process of elimination there remained, if we are rightly advised, at least two of the five positions of judge of the municipal courts of the city of Long Beach for which no qualified occupants had been provided by operation of said amendment or of the statute giving effect to the same. Did this state of the law and facts cause to exist as to either or both of these positions a vacancy in office which the Governor of California might legally fill by appointment?

[6] The first contention of the respondent to the effect that such vacancy does not exist is based upon his interpretation of the clause in the portion of the amendment to section 11 of article VI of the constitution reading: "Upon the establishment of any such municipal court, and until the first election and the qualification of the judge or judges thereof and the first appointment and the qualification of the clerks and other attaches thereof, the judge or justices and the clerks and other attaches of any existing inferior courts in such city or city and county or township *shall become and act as the judges, clerks and attaches respectively*

*of such municipal court."* In making this contention the
respondent lays especial stress upon the use of the article
"the" before the word "judges" in the above emphasized
portion thereof, arguing that by the use of the word "the"
in this immediate connection the framers of the amendment
intended to provide that the judges of the inferior courts
who were qualified to become and act as the judges of the
municipal court upon the establishment thereof should con-
stitute all of the judges thereof until the occurrence of the
first election at which judges of such court could be elected.
We are of the opinion that this contention not only requires
altogether too much emphasis to be placed upon the employ-
ment of the article "the" in its aforesaid connection, but
that to give it such importance and to interpret the clause
in which it occurs conformably to the respondent's contention
would lead to consequences entirely out of harmony with
the apparent design of the framers of this amendment in
providing for a system of municipal courts. To illustrate, it
is a matter of common knowledge that the purpose lying
behind the creation and establishment of these courts in
the larger cities of our commonwealth was that of relieving
the existing congestion of litigation in these populous centers
by providing for the immediate functioning of this new sys-
tem of courts therein. But if the respondent is correct in
his foregoing contention, and if we are correct in our con-
clusion as to the number of judges of inferior courts pres-
ently qualified to become judges of the municipal court of
Long Beach, such court would enter upon its activities ham-
pered by the fact that while five judicial positions are pro-
vided for it two or possibly more of these must remain vacant
until an election can occur at which such vacancies can be
filled; or, in other words, for a year and a half after such
court should begin to function. Or, to carry the illustration
still further, if perchance none of the judges of such in-
ferior courts as held the relation to the city of Long Beach
essential to his becoming a judge of the municipal court
was qualified to act as such, nevertheless no vacancy would
exist therein which the Governor would have the right by
appointment to fill. The cases which the respondent cites
from other jurisdictions as supporting his aforesaid conten-
tion as to the importance of the article "the" in certain

situations bear no analogy to the situation presented in the instant case.

[7] The next contention of the respondent is that the term "vacancy" as used in section 17 of the act of 1925, *supra,* has no application to the office of judge of the municipal court as to which there has been as yet no incumbency. In support of this contention we are referred to section 996 of the Political Code, which prescribes a series of contingencies upon the happening of which an office *"becomes vacant"* and to section 999 of the Political Code, which prescribes that "when an office becomes vacant and no mode is provided by law for filling such vacancy, the Governor must fill such vacancy by granting a commission to expire at the next session of the legislature or at the next election by the people." We are inclined to the opinion that these sections of the Political Code, while they evidently have reference to vacancies which occur in civil offices through the cessation, for the several causes specified therein, of incumbencies in such offices, were not intended to include offices which from the time of their creation are without incumbents until such need is supplied by the election or appointment of qualified persons to fill such offices. [8] The term "vacancy" has a broader meaning than merely that of a hiatus in incumbency. It means with relation to an office, a state of being unoccupied. In Bouvier's Law Dictionary the word "vacancy" as applied to an office is defined "A place which is empty. The term is principally applied to cases where an office is not filled." The Century Dictionary defines the term "vacancy" as "an unoccupied or unfilled post, position, or office." In the case of *People ex rel. etc.* v. *Hylan,* 212 N. Y. 236 [Ann. Cas. 1915D, 122, 106 N. E. 89], the Governor of New York undertook to fill by appointment the offices of certain county judgeships which had just been created by an amendment to the New York constitution upon the theory that vacancies in such offices existed as soon as the offices came into being and which as Governor he was authorized to fill. His action in so doing was upheld by the New York court of appeals in an exhaustive opinion wherein the decisions of the courts of many other jurisdictions are reviewed and in which, as a result of such review, said court declares that "the general rule is that when a law establishing an office takes effect a vacancy in the office at once exists unless the language of

the law imports futurity of selection"; and said court further quotes approvingly the definition of the term "vacancy" as given by the supreme court of Tennessee in the case of *State ex rel. etc.* v. *Maloney,* 92 Tenn. 62, 72 [20 S. W. 419], as follows: "There is a vacancy in every instance in which there is an office without an incumbent. Every office without an officer is vacant. Therefore every new office created must of necessity be vacant from the time of its creation until it is filled by appointment or election." See, also, *Cline* v. *Greenwood,* 10 Or. 230, 240; *State ex rel. etc.* v. *County Court,* 50 Mo. 317 [11 Am. Rep. 415]; *State ex rel. etc.* v. *McMillan,* 108 Mo. 153 [18 S. W. 784]; *In re Fourth Judicial Dist.,* 4 Wyo. 133 [32 Pac. 349]; *Smith* v. *Askew,* 48 Ark. 82 [2 S. W. 349]; *Gormley* v. *Taylor,* 44 Ga. 76; *State etc.* v. *Irwin,* 5 Nev. 111; *Knight* v. *Trigg,* 16 Idaho, 256 [100 Pac. 1060]; *State ex rel. etc.* v. *Breckinridge,* 34 Okl. 649 [126 Pac. 806]. A persuasive decision touching this subject is the decision of this court in the case of *Harrison* v. *Colgan,* 148 Cal. 69 [82 Pac. 674], which had reference to the appointment and salaries of justices of district court of appeal of this state upon the first organization thereof in the year 1905, and wherein this court used the following language: "We are further of the opinion that the preliminary term of the office of justice of the district court of appeal began to run as soon as that office was created by the adoption of the amendment of 1904 to the Constitution. Immediately upon the taking effect of the amendment, and without any regard whatever to the appointment of any person as justice thereof, the district courts of appeal became existing courts to which appeals could be taken, and the offices of justices thereof became existing offices to which persons could be appointed. A preliminary term extending to January 7, 1907, immediately began to run, and vacancies in the offices were at once created. These vacancies might have been filled at any time thereafter by the appointment of persons to hold the respective offices for the unexpired part of the preliminary terms then running."

[9] We are, therefore, of the opinion that immediately upon the establishment of the municipal court in the city of Long Beach and of the occurrence of a condition whereby there were not a sufficient number of judges of inferior courts therein qualified to fill the five positions provided for cities

of the class of the city of Long Beach a vacancy arose and existed in the office of judge of the municipal court of Long Beach which the Governor of this state was authorized to fill by appointment under section 17 of the act of 1925, which reads as follows:

"Any vacancy in the office of a judge of a municipal court shall be filled by appointment by the governor, and any person so appointed shall hold office until the expiration of the term of the office to which he was appointed, and until his successor is elected and qualified."

It being conceded herein that the petitioner as such appointee of the Governor is otherwise qualified to fill such office and has properly taken the oath of office, and has also made the proper affidavit and demand for the amount of the salary of such office for the payment of which he seek this writ, it is our conclusion that the writ should issue as prayed for herein.

It is so ordered.

Myers, C. J., Waste, J., Shenk, J., Lennon, J., Seawell, J., and Lawlor, J., concurred.