[S. F. No. 16544.  In Bank.—February 19, 1941.]

JOHN M. AULT, Petitioner, v. THE COUNCIL OF THE CITY OF SAN RAFAEL et al., Respondents.

Lionel Browne for Petitioner.

Martinelli & Gardiner for Respondents.

CURTIS, J.—Petitioner, as a registered elector of the City of San Rafael, filed his application for a writ of *mandamus* to compel respondents to publish a proposed amendment to the charter of said city, and to call a special election thereon not less than forty nor more than sixty days

thereafter. An alternative writ of mandate has been heretofore issued; a return filed by respondents; and the cause argued orally by counsel for the respective parties.

It is alleged that a petition requesting the city council to submit to the electors of the city a proposed amendment to the city charter was circulated and signed by more than 15 per cent of the registered electors; that the petition was filed with the city clerk on December 4, 1940, along with a request to .publish the same within fifteen days thereafter and to hold a special election thereon not less than forty nor more than sixty days after such publication. It is further alleged that no publication was made within fifteen days from the date of filing nor was a special election thereafter called within a period of seventy-five days following the December 4th filing.

Petitioner contends that such failure to publish and call a special election within the seventy-five day period is in direct violation of article XI, section 8, of the state Constitution. The provisions therein, it is argued, make it obligatory, on the part of the city council, to so act within the period above designated. Petitioner, therefore, now asks this court to order the council to publish immediately and call a special election not less than forty nor more than sixty days thereafter.

Respondent city council, by its return, admits the filing of the petition and its refusal to publish and call a special election within the seventy-five day period, but alleges that a resolution was adopted at its meeting on February 3, 1941, wherein it ordered that publication of the petition for the proposed amendment be made on February 20, 1941, and that an election be held thereon on April 14, 1941; the latter date being the date fixed for the holding of a general municipal election of the city. It should be here noted that although petitioner in his original petition alleged that respondents had refused to publish said proposed amendment and had refused to submit the same to the registered voters of said city at the next general election, counsel for petitioner, during the oral argument, admitted that it was the intention of respondents to submit this proposed amendment at the next general election to be held in said city, as ordered by the city council in said resolution of February 3, 1941.

Respondents deny that they have violated article XI, section 8, of the state Constitution, and maintain that under

its provisions it was discretionary with the council to submit said proposed amendment either at a special election to be called after publication of the proposed amendment or at the general election to be held on April 14, 1941.

The granting of a writ of mandate is discretionary and it will be granted only where necessary to protect a substantial right and only when it is shown that some substantial damage will be suffered by the petitioner if said writ is denied. (*Rogers* v. *Board of Directors,* 218 Cal. 221 [22 Pac. (2d) 509]; *Fawkes* v. *City of Burbank,* 188 Cal. 399 [205 Pac. 675]; *Clough* v. *Baber,* 38 Cal. App. (2d) 50 [100 Pac. (2d) 519]; *DeBrincat* v. *Mogan,* 1 Cal. App. (2d) 7 [36 Pac. (2d) 245].) It therefore follows that a petitioner upon application must show that as a result of a failure to grant such writ, he will suffer some substantial damage.

In the instant case petitioner is asking this court to issue its writ of mandate directing the city council to publish immediately said proposed amendment, and within not less than forty nor more than sixty days thereafter to call a special election on the proposed amendment even though a general election is to be held on April 14th. If the writ were issued immediately, a special election could not possibly be held earlier than April 2d, because of the necessity of publication and the forty day limit thereafter required by article XI, section 8, before election. However, as noted above, the respondent city council has ordered the proposed amendment to be placed on the ballot at the general election on April 14th or only twelve days after the earliest possible special election date. Petitioner does not contend that the amendment would be invalid if it be approved at the general election. During the oral argument counsel for petitioner made some statement to the effect that the proposed amendment if placed on the ballot at the general election, might be lost sight of and the petitioner therefore damaged. We do not believe this was seriously urged, but even if it were, this court could not make such assumption. Furthermore, counsel for respondents pointed out that this proposed amendment would be the only one on the ballot at the general election. Petitioner has completely failed to show how he, as a taxpayer, would be injured in any way by the short delay between the earliest date of a special election and the general election of April 14th.

No injury being shown, this petition should be denied, and it is so ordered.

Shenk, J., Edmonds, J., Traynor, J., and Gibson, C. J., concurred.

CARTER, J., Dissenting.—I dissent.

In my opinion petitioner is clearly entitled to the issuance of a writ of mandate as prayed for in his petition.

Article XI, section 8, as amended in 1936, provides in part:

''The charter of any city or city and county may be amended by proposals therefor submitted by the legislative body thereof on its own motion or on petition signed by fifteen per cent of the registered electors, or both. *Such proposals shall be submitted to the electors at either a special election called for that purpose or at any general or special election.* Petitions for the submission of any amendment shall be filed with the legislative body of the city or city and county not less than sixty days prior to the general election next preceding a regular session of the Legislature. The signatures on such petitions shall be verified by the authority having charge of the registration records of such city or city and county, and the expenses of such verification shall be provided by the legislative body thereof. If such petitions have a sufficient number of signatures the *legislative body* of the city or city and county *shall so submit the amendment or amendments so proposed to the electors.* Amendments proposed by the legislative body and amendments proposed by petition of the electors may be submitted at the same election. The amendments so submitted *shall* be advertised in the *same manner* as herein provided for the advertisement of a proposed charter, and the *election thereon, held at a date to be fixed by the legislative body of such city or city and county, not less than forty, and not more than sixty, days after the completion of the advertising in the official paper.*''

It is to be noted that the advertisement of the amendments to the charter shall be done in the same manner as advertisements of a proposed charter. In regard to advertising the charter the section provides:

''The legislative body of said city or city and county shall, within fifteen days after such filing, cause such charter to be published once in an official newspaper . . . ''

On two occasions the appellate courts of this state have had occasion to consider whether or not the calling of the election on a charter amendment was mandatory under article XI, section 8. In *Lubliner* v. *Alpers*, 145 Cal. 291 [78 Pac. 722], the court determined that *mandamus* would not lie to compel the legislative body to call the election. The court does not discuss the reasons upon which its holding was based but at that time, 1904, the provision was quite different. It read:

"The charter, so ratified, may be amended at intervals of not less than two years by proposals therefor, submitted by the legislative authority of the city to the qualified electors thereof at a general or special election, held *at least forty days after the publication of such proposals* for twenty days in a daily newspaper of general circulation in such city, and ratified by a majority of the electors voting thereon, and approved by the legislature as herein provided for the approval of the charter. Whenever fifteen per cent of the qualified voters of the city shall petition the legislative authority thereof to submit any proposed amendment or amendments to said charter to the qualified voters thereof for approval, the legislative authority thereof must submit the same."

Obviously, the court was correct in holding that the section as it stood in 1904 was not mandatory, for several reasons. The portion thereof dealing with the time the election should be held had to do with proposed amendments *initiated by the legislative body of the city rather than the electors.* The provision authorizing 15 per cent of the electors to initiate the proposed amendment contained no provisions as to the *time* when such election should be held; the only mandatory requirement was that the amendments be submitted to the electors at some time. But even assuming that the provisions as to the time of the election applied to amendments originating with the electors, yet there is no particular time when the election must be had. The requirement is that it be at least forty days after the publication, thus setting a minimum but no maximum, as is done in the section as it now reads. The other authority which considered whether the section was mandatory is *Moore* v. *City of Los Angeles,* 58 Cal. App. 555 [209 Pac. 64]. There a writ of mandate was sought to compel the Los Angeles City Council to advertise a proposed amendment within fifteen

days from the time the petition by 15 per cent of the electors was filed. The court held that the requirement that the advertisement of the amendment be made in the same "manner" as the advertisement of a charter, meant that the same *method* must be followed but that the term "manner" did not include the *time* the advertisement must be made, that is, within the fifteen days following the filing of the petition for the amendment. The court gives three grounds for so holding, two of which are predicated on the factor that the section as it then read contained the statement:

"Such proposals (referring to amendments) shall be submitted to the electors *only during the six months next preceding a regular session of the legislature or thereafter and before the final adjournment of that session* and at either a special election called for that purpose or at any general or special election." By the amendment to the section in 1930 and as appears in the subsequent amendments of 1932 and 1936, the italicized portions of the section were *omitted*. Therefore the court's reasoning in the Moore case insofar as it is predicated on those two grounds is no longer either pertinent or the law. The third ground relied on by the court in the Moore case is that it would not be practicable to apply the fifteen day period to charter amendments for the reason that in many instances that period would not be sufficient time in which to verify the signatures on the petition, whereas in the case of a freeholder's charter proposal, the verification of signatures has all been consummated before the fifteen days commences to run. That reasoning I cannot approve. If it were pursued to its logical conclusion the court would indulge in legislation, for the reason that it would render nugatory any period of time fixed for the doing of a certain thing in the constitutional provision adopted by the people. It is to be presumed that the people in enacting the constitutional provision here involved gave consideration to the time physically required to perform the preliminary acts, and concluded that the time specified was sufficient. Furthermore, a more reasonable view would be that if it were impossible to perform the preliminary acts in the stated time the court could determine that the time was extended sufficiently to enable the completion of the verification of the signatures, but no longer. The amount of additional time required would be a question of fact.

Returning again to the constitutional provision as it now reads, I believe that it is patent from the language employed and particularly the above italicized portions thereof, that it is the mandatory duty of the legislative body to call the election not less than forty and not more than sixty days after the advertisement. And to give real force and consequence to that duty, it is equally clear that the advertisement must be made within fifteen days after the petition for the proposed amendment is filed, or at most within the time in fact required for the verification of the signatures on the petition. Otherwise, the purpose to be accomplished by the constitutional provision will be frustrated. The legislative body could postpone the election indefinitely by failing to advertise, and by so doing indirectly and improperly escape their express duty to call the election within the prescribed time. This means of course that the phrase ''in the same manner'' must under the circumstances and for the foregoing reasons be held to embrace not only the method of advertising but also the time when the advertisement must be made. These conclusions are not without support. Sound public policy demands that when electors have the right to amend their charter and they comply with the conditions necessary therefor, they are entitled to have the matter determined by a vote of the electorate in the time specified in the authorizing act. This is a high and treasured privilege which is fundamental in a democracy, and a dilatory or belligerent legislative body should not be permitted to thwart it. This is especially true when we consider that such body's functions in the matter are purely ministerial and not legislative. This public policy is recognized in *Wallace* v. *Payne,* 197 Cal. 539, 545 [241 Pac. 879], where it is said:

''Such an interpretation would also be in accord with the statutory policy that when cities and cities and counties have once adopted charters, and when they discover that such charters are defective in any particular or are inadequate for the present needs or growth of the municipality, and should be amended, such amendment in order to be remedial should be facilitated rather than unreasonably delayed in its adoption.''

While it is true that the respondents on February 3, 1941, adopted a resolution evidencing an intent to advertise for the election on February 20, 1941, to be held at the general municipal election on April 14, 1941, that action was taken

long after the time prescribed by the Constitution. The petition was filed on December 4, 1940, therefore the advertisement should have been made not later than December 19, 1940, and although respondents deny that they refused to advertise and call the election, they have done nothing except assert that they intended to call one, and it was not until after petitioner had filed his petition for the writ here involved, that it passed, on February 3, 1941, its resolution of intention to advertise the proposed amendment on February 20, 1941. Respondents' conduct and pleadings are therefore tantamount to an admission that they never intended to comply with the Constitution, but rather intended to hold the election at the time of the general municipal election in April. This is equivalent to a failure to make any appearance in the proceeding or to admitting petitioner's allegations. Under such circumstances *mandamus* should issue, as it is not a situation where the respondent has not refused to perform the mandatory act or has already performed it. The fact remains that it has not advertised the amendment or called the election; its mere expression of intention to do so is not enough; indeed that amounts in reality to a confession that the writ should issue. It is immaterial that the time within which respondent should have advertised under the Constitution has expired. That does not prevent the issuance of the writ. (*Wahl* v. *Waters,* 11 Cal. (2d) 81 [77 Pac. (2d) 1072]; *Conn* v. *City Council,* 17 Cal. App. 705 [121 Pac. 714, 719].)

The majority opinion does not decide anything. It ignores and fails to pass upon the only legal proposition presented by the petition, namely, whether under the provisions of article XI, section 8 of the Constitution, the city council was required to advertise the proposed amendment within fifteen days and submit the same to the electors at a special election within sixty days thereafter.

I am positively and unalterably opposed to any such sidestepping policy. The duty of the city council in the premises is either mandatory or discretionary, and both parties to this litigation and the general public are entitled to know what the opinion of this court is on this proposition.

A petition for a rehearing was denied March 20, 1941. Carter, J., voted for a rehearing.