## Reeves et al. v. Simons.

March 13, 1942.

Hubert Meredith, Attorney General, Harry D. France, Assistant Attorney General, and Dodd & Dodd for appellants.

Stanley B. Mayer for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Reversing.

This action was instituted by Eli Simons, doing business as the Kentucky Distillers Wholesale Liquor Company, to enjoin the members of the Kentucky State Alcoholic Control Board from revoking his permit as a wholesale liquor dealer for alleged violations of the Distilled Spirits And Wine Fair Trade Act (Chapter 13 Acts of 1940, now Section 2554e-1 et seq., Kentucky Statutes, Baldwin's 1941 Supplement) by granting rebates. The chancellor granted a temporary injunction which this court refused to dissolve, and while the action was pending on its merits plaintiff's permit expired. By an amended petition he sought to recover $3,230.84 in taxes on the ground that this Act under which it was paid was unconstitutional.

Although the chancellor held the Act to be unconstitutional, he refused to adjudge plaintiff a recovery of the tax for the reason given in his written opinion that plaintiff had made $38,000 in a single year while operating under this statute, and because he only pleads he paid part of this tax under protest. The Board appeals from so much of the judgment as holds the Act to be unconstitutional, but no cross-appeal was prosecuted by plaintiff. Therefore, the sole question before the court is the constitutional one.

Plaintiff's challenge of constitutionality is under Sections 3, 19, 27, 28, 29, 51 and 109 of the Kentucky Constitution, and under the due-process clause of the Fifth and Fourteenth Amendments to the Federal Constitution.

The 1940 session of the General Assembly passed what is known as the Distilled Spirits And Wine Fair

Trade Act (Chapter 13, page 90, Acts 1940, now Section 2554e-1 et seq., Kentucky Statutes, Baldwin's 1941 Supplement). This statute rigidly controls the sale of liquor and wine from the distiller to the wholesaler, and from the wholesaler to the retailer. Section 2554e-1 is to the effect that except as is otherwise provided the Act shall be administered under the Alcoholic Beverage Control Law of 1938 (Chapter 2 of the Acts of that year, now Sections 2554b-97 to 2554b-222, Kentucky Statutes, Baldwin's 1939 Supplement). It is argued by plaintiff that Sections 27, 28, 29 and 109, Kentucky Constitution (which relate to the separation of the executive, legislative and judicial branches of our government, and to the establishment of courts) are violated by the Act because it permits the Board to exercise judicial functions in conducting hearings and depriving dealers of their licenses if it finds they have violated the Act. This question was decided adversely to plaintiff's contention in Keller v. Kentucky Alcoholic Beverage Control Board, 279 Ky. 272, 130 S. W. (2d) 821, and Bloemer v. Turner, 281 Ky. 832, 137 S. W. (2d) 387. In the Keller case it was written there is no constitutional objection to an administrative board ascertaining facts and administering the law; that although it acts in a quasi judicial capacity, it is not exercising judicial power within the meaning of the Constitution forbidding one branch of government from usurping the functions of another. Section 2554b-147 makes provision for a judicial review of the Board's action.

Plaintiff further urges that Sec. 2554e-1 in providing the Act shall be administered under the Alcoholic Beverage Control Law of 1938 violates that part of Section 51 of our Constitution which forbids the provisions of a law from being extended or conferred by reference to its title only. It has been several times written that the manner of procedure may be provided by reference to other sections of the Statutes without doing violence to Section 51. Hart v. Com., 207 Ky. 343, 269 S. W. 300; Clark v. Com., 209 Ky. 184, 272 S. W. 430; Carey-Reed Co. v. Sisco, 251 Ky. 22, 64 S. W. (2d) 430.

Under Section 2554e-2 no distiller, rectifier, blender, wholesaler, vintner, or retailer who holds a license in this State to sell distilled spirits or wines may sell same without complying with the provisions of this law and all sales must be made according to a fair trade contract as

defined under the Fair Trade Act, Section 4748i-1, Kentucky Statutes, Baldwin's 1939 Supplement. Such contracts must provide for the following minimum mark-up resale prices without discount: From the distillers, rectifiers, blenders, producers or owners to the wholesalers, no less than 15%; from vintners to wholesalers, not less than 20%; from wholesalers to retailers, not less than 33 1/3% in less than case lots and not more than 10% in units of one case or more. In this section there is embraced an inhibition against donations, free goods, bribery or rebates, before or after sales, and such are considered violations of the minimum mark-up price, which shall include bottling and other charges, plus all taxes and all transportation. Any licensee who shall sell or purchase, or offer so to do, at less than the minimum mark-up price is subject to the penalties prescribed in the Act.

Section 2554e-3 requires all distillers or producers licensed in the State to file with the Department as many copies as it may require of the fair trade contracts under which it is proposed to sell liquor or wine, not less than ten days prior to the offer of sale, which contracts shall give the brand, age, proof, sale price and minimum resale price, and the name and address of the wholesaler to whom same is offered for sale. The following section requires the wholesaler to likewise file with the Department copies of his contracts with the retailer, giving practically the same information as is required in the preceding section.

The main attack against the Act is that the minimum mark-up resale price violates the due-process clause of the Fifth and Fourteenth Amendments to the Federal Constitution. Plaintiff argues that the mark-up is arbitrary and discriminatory and has no reasonable relation to the regulation of the sale of alcoholic beverages.

The proof shows that due to price-cutting and to cut-throat competition by producers, wholesalers and retailers, chaos existed in the trade which resulted in law violations, excessive use of intoxicants and other conditions detrimental to the commonweal. The evidence is to the effect that the fixing of minimum prices has had a stabilizing effect upon the industry, done away with ruinous competition, resulted in less consumption of intoxicants by the public and has caused liquor to be sold in more wholesome surroundings.

For many years the manufacture, sale and transportation of liquor has been strictly regulated in this State. Not only have licenses been required of its manufacturers and sellers, but by statute its sale has been limited to select persons and only at selected places, and regulations which would be called discriminatory, arbitrary and unreasonable if applied to any other business have been upheld by the courts as a reasonable exercise of the police power in restricting the liquor traffic. Board of Trustees of Town of New Castle v. Scott, 125 Ky. 545, 101 S. W. 944, 30 Ky. Law Rep. 894; Beacon Liquors v. Martin, 279 Ky. 468, 131 S. W. (2d) 446. Mr. Justice McReynolds in upholding the Alcoholic Beverage Control Law, Section 2554b-97 et seq., Kentucky Statutes, Baldwin's 1939 Supplement, in Ziffrin, Inc., v. Reeves, 308 U. S. 132, 60 S. Ct. 163, 84 L. Ed. 128, said that as Kentucky has power to prohibit the manufacture, sale, transportation, or possession of liquor, it was permissible for the State to definitely prescribe the conditions under which such acts would be permitted; the fact that the State permitted its manufacture only on condition it would be sold to an indicated class of customers and transported in specific ways, did not impose unreasonable conditions, but appropriate ones in minimizing the evils of the liquor traffic.

Since liquor has for many years been subjected to the most rigorous regulations under the police power of this State, it is not necessary for us to base this opinion on some of the recent decisions of this court and those of foreign jurisdictions, including the United States Supreme Court, to the effect that the Legislature under its police power may fix minimum prices on the sale of commodities, whether or not "affected with a public interest," Moore v. Northern Kentucky Independent Food Dealers Ass'n, 286 Ky. 24, 149 S. W. (2d) 755, 757; Wholesale Tobacco Dealers Bureau of Southern California v. National Candy & Tobacco Co., 11 Cal. (2d) 634, 82 P. (2d) 3, 118 A. L. R. 486; State v. Sears, 4 Wash. (2d) 200, 103 P. (2d) 337; Nebbia v. People of New York, 291 U. S. 502, 54 S. Ct. 505, 78 L. Ed. 940, 89 A. L. R. 1469; Olsen v. State of Nebraska, 313 U. S. 236, 61 S. Ct. 862, 85 L. Ed. 1305, 133 A. L. R. 1500; and we refrain from doing so, but bottom this opinion solely upon the fact that the statute under attack relates only to the regulation of the sale of liquor and places a minimum price thereon.

The chancellor seemed to think the mark-up in the resale price was for the sole benefit of the dealer and that the Act ran afoul of Section 3 of our Constitution which forbids the granting of exclusive emoluments or privileges except for public service. The natural status that anybody might sell whisky has long since ceased to exist and its sale under police power for years has been limited to select persons and only at selected places. Board of Trustees of Town of New Castle v. Scott, 125 Ky. 545, 101 S. W. 944, 30 Ky. Law Rep. 894. The record does show plaintiff made huge profits in 1940 on a small investment, but that profit was due to the fact that he had bought whisky at depressed prices before this law became effective rather than to the minimum mark-up. The proof is that after deducting the cost of doing business from the minimum mark-up; there is left but a modest per cent profit to the dealer.

The answer to the argument that this statute is more inclined to enrich the dealer than it is to regulate the sale of whisky for the public benefit, is that courts are not concerned with the wisdom or appropriateness of legislation, but the public benefit to be derived therefrom and the adequacy thereof is primarily for the Legislature. Unless it is clear the statute has no reasonable relation to a proper legislative purpose and is arbitrary and discriminatory and without substantial basis, the courts will not interfere.

Innumerable methods have been devised by the legislatures of the several states, and some by the national congress, in an attempt to properly regulate the liquor traffic—none of which have met with great success—and we cannot say that the instant law calling for strict price control and the elimination of ruinous competition has no relation to the subject or that it is arbitrary and discriminatory and not based upon substantial grounds.

The judgment is reversed insofar as it holds the Act to be unconstitutional.

The Whole Court sitting.

Judge Tilford, concurring.

I do not agree with the conclusion of the Court that the power of the State to regulate the liquor industry is sufficient justification for upholding the constitutionality of the Act in question, since the purpose of the Act is not

to protect the public. I concur in the decision, however, because of the sweeping decision of the Supreme Court of the United States in the Olsen case, referred to in the opinion, which holds that the State's power to regulate prices of articles sold within its borders is not limited to businesses affected with a public interest, and does not conflict with the due process clause of the Fourteenth Amendment to the Federal Constitution.