[S. F. No. 20236. In Bank. Nov. 30, 1959.]

ALLIED PROPERTIES (a Corporation), Respondent, v.
DEPARTMENT OF ALCOHOLIC BEVERAGE CON-
TROL OF THE STATE OF CALIFORNIA, Appellant.

142

Edmund G. Brown and Stanley Mosk, Attorneys General, and Charles A. Barrett, Deputy Attorney General, for Appellant.

Brobeck, Phleger & Harrison, Hart H. Spiegel, Robert J. Drewes, Pillsbury, Madison & Sutro, John A. Sutro, Noble K. Gregory, Allan N. Littman, Heller, Ehrman, White & McAuliffe, George A. Blackstone, J. Albert Hutchinson,

Emmett E. Doherty, Arden & Arden, Athearn, Chandler & Hoffman, Walter Hoffman and Clark W. Maser as Amici Curiae on behalf of Appellant.

Steinhart, Goldberg, Feigenbaum & Lader, John H. Steinhart and Marc M. Monheimer for Respondent.

M. Mitchell Bourquin, George Olshausen, Samuels, Jacobs & Sills and William K. Coblentz as Amici Curiae on behalf of Respondent.

GIBSON, C. J.—Allied Properties was accused of violating sections 55.5, 55.6 and 55.65 of the Alcoholic Beverage Control Act and rule 99 of the State Board of Equalization by advertising and offering to sell at retail distilled spirits and wines at prices less than the minimum resale prices provided for by fair trade contracts filed with the board.[1] (Subsequently the Department of Alcoholic Beverage Control became the constitutional successor of the board with regard to liquor control (Const., art. XX, § 22, as amended in 1954), and it has been substituted as the defendant herein. For convenience we shall refer to the statutes as they appeared before codification, and we shall use the word "department" in referring to the administrative body in charge of liquor control.) Allied's off-sale general license was suspended for 15 days, and in mandamus proceedings to review the suspension order the superior court determined that the provisions of the act and the rule cited above were invalid. This appeal followed. The facts are not disputed, and the sole question raised is whether the provisions are constitutional.

Section 55.5 (Stats. 1937, ch. 758, p. 2173, now Bus. & Prof. Code, §§ 24750-24753) authorizes fair trade contracts prohibiting the buyer from reselling, except at the price stipulated by the seller, alcoholic beverages which bear the trade-mark or name of the producer and are in open competition with others of the same general class. The section further provides that wilfully advertising, offering to sell, or selling, at less than the price stipulated in such contracts, whether or not the actor

---

[1]The Alcoholic Beverage Control Act (Stats. 1935, ch. 330, p. 1123, as amended; 2 Deering's Gen. Laws, 1944, Act 3796) is now contained in division 9 of the Business and Professions Code. The codification did not alter the substantive law in any respect material to this case, and no relevant changes have been made in rule 99, which is now a rule of the Department of Alcoholic Beverage Control.

is a party to the contract, is unfair competition and actionable at the suit of any person damaged thereby. The statute expressly excludes from its operation any agreement between producers, between wholesalers, or between retailers as to sale or resale prices.[2]

Section 55.6 (Stats. 1947, ch. 657, p. 1698, now Bus. & Prof. Code, §§ 24754-24757) provides that all retail sales of distilled spirits shall be made pursuant to fair trade contracts entered into under section 55.5 and prohibits the violation of such contracts. The section also provides that all manufacturers and wholesalers of distilled spirits shall file and maintain with the department a list of the prices at which their product will be sold to retailers and that all their sales to retailers shall be in compliance with those lists.

Section 55.65 (Stats. 1949, ch. 574, p. 1064, now Bus. & Prof. Code, §§ 24850-24881), sets forth numerous provisions applicable to the sales of wine. It includes provisions like those governing the sales of distilled spirits except that the prices at which retailers are required to sell to consumers are to be determined either by fair trade contracts or by resale price lists filed by the manufacturer or wholesaler with the department.[3]

Rule 99 provides in part that no manufacturer or wholesaler shall sell distilled spirits except pursuant to a fair trade contract as provided for by section 55.5 of the act, that copies of such fair trade contracts shall be filed with the department, and that no licensee shall advertise or offer for sale alcoholic beverages at retail at a price less than the minimum resale price provided for by a fair trade contract filed with the department pursuant to this rule. (Cal. Admin. Code, tit. 4, § 99, subds. (a), (b), (f).)

Under section 22 of article XX of the Constitution the department has power in its discretion to revoke any liquor license if it determines for good cause that the continuance of such license will be contrary to public welfare or morals. The power to revoke includes the lesser power to suspend. (*Reynolds* v. *State Board of Equalization*, 29 Cal.2d 137, 140 [173 P.2d 551, 174 P.2d 4].) In the exercise of its discretion the department can properly consider substantial

---

[2]The provisions of this section correspond exactly with those of the general Fair Trade Act enacted in 1931. (Stats. 1931, ch. 278, p. 583, now Bus. & Prof. Code, §§ 16900-16905.)

[3]No violation of the provision for price lists is involved here.

violations of statutory provisions concerning alcoholic beverages or of rules of the department as good cause for suspension of licenses, and in the present case there is no contention that, if the statutes and rules violated are valid, the suspension constitutes an abuse of discretion. Moreover, with respect to wine, it is provided by statute that the department can suspend licenses in the event of a prohibited sale and can, upon a third violation, revoke them. (Alcoholic Beverage Control Act, § 55.65, subd. (n), now Bus. & Prof. Code, § 24880.)[4] Further, a rule of the department provides that a violation of its rules and regulations by a licensee will be deemed contrary to public welfare and morals and grounds for suspension or revocation of a license. (Cal. Admin. Code, tit. 4, § 1.) Although no criminal prosecution is involved here, it should be noted that the act contains a general provision, applicable to prohibited sales of alcoholic beverages, that violations for which another penalty is not specifically provided in the act constitute misdemeanors punishable by a fine, a jail term, or both. (Alcoholic Beverage Control Act, § 65, now Bus. & Prof. Code, § 25617.)

In passing upon the fair trade provisions we must be guided by the well-settled principles that the presumption is in favor of constitutionality and that the invalidity of an act of the Legislature must be clear before the statute can be declared unconstitutional. It is not our province to weigh the desirability of the social or economic policy underlying the statute or to question its wisdom; they are purely legislative matters.

Where, as here, it is urged that a statute does not constitute a proper exercise of the police power, the inquiry of the court is limited to determining whether the object of the statute is one for which that power may legitimately be invoked and, if so, whether the statute bears a reasonable and substantial relation to the object sought to be attained. (*Wholesale Tobacco Dealers Bureau* v. *National etc. Co.*, 11 Cal.2d 634, 643 [82 P.2d 3, 118 A.L.R. 486].) Acting under this rule, the courts have upheld statutes regulating prices and restricting the freedom to bargain. (*Wholesale Tobacco Dealers Bureau* v. *National etc. Co.*, 11 Cal.2d 634, 651-656 [82 P.2d

[4]There was no comparable provision with respect to distilled spirits in January 1953, when the accusation was filed, but there is now a general suspension and revocation provision which is applicable to prohibited sales of distilled spirits. (Bus. & Prof. Code, § 24200, subd. (b).)

3, 118 A.L.R. 486]; *Max Factor & Co.* v. *Kunsman,* 5 Cal.2d
446, 459-462 [55 P.2d 177]; *Nebbia* v. *New York,* 291 U.S.
502, 529 et seq. [54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469].)
 A state has particularly wide powers with respect to
the manufacture of and traffic in alcoholic beverages and may
provide for their prohibition or impose such conditions and
regulations as it may deem proper. (*Ziffrin, Inc.* v. *Reeves,*
308 U.S. 132, 138-139 [60 S.Ct. 163, 84 L.Ed. 128]; *Crowley*
v. *Christensen,* 137 U.S. 86, 91 [11 S.Ct. 13, 34 L.Ed. 620].)
The same broad powers are recognized in section 22 of article
XX of the California Constitution.[5] (*Sandelin* v. *Collins,*
1 Cal.2d 147, 153 [33 P.2d 1009, 93 A.L.R. 956].)

Many states have adopted price-regulating measures in-
tended to prevent retail price cutting and bargain sales of
alcoholic beverages and the evils considered to follow from
those practices, namely, excessive purchase and use of liquor
and disruption of orderly marketing conditions. Where the
constitutionality of such measures has been challenged, most
courts have upheld them. (*Gipson* v. *Morley,* 217 Ark. 560
[233 S.W.2d 79, 83]; *Schwartz* v. *Kelly,* 140 Conn. 176 [99
A.2d 89, 91]; *Reeves* v. *Simons,* 289 Ky. 793 [160 S.W.2d 149,
151]; *Supreme Malt Products Co.* v. *Alcoholic Beverages C.
Com'n,* 334 Mass. 59 [133 N.E.2d 775, 778]; *Dundalk Liquor
Co.* v. *Tawes,* 201 Md. 58 [92 A.2d 560, 561]; *Butler Oak
Tavern* v. *Division of Alcoholic Bev. Control,* 20 N.J. 373
[120 A.2d 24, 30]; *Gaine* v. *Burnett,* 122 N.J.L. 39 [4 A.2d 37,
39]; *Pompei Winery* v. *Board of Liquor Control,* Ohio App.,
149 N.E.2d 733, 748. But *cf. Scarborough* v. *Webb's Cut Rate
Drug Co.,* 150 Fla. 754 [8 So.2d 913, 921]; *Schwegmann Bros.*
v. *Louisiana Board, etc. Control,* 216 La. 148 [43 So.2d 248,
259, 14 A.L.R.2d 680].)

The Alcoholic Beverage Control Act states that it was
enacted "for the protection of the safety, welfare, health,
peace, and morals of the people of the State to eliminate the

[5]Section 22 of article XX of the California Constitution reads in part:
"The State of California, subject to the Internal Revenue Laws of the
United States, shall have the exclusive right and power to license and
regulate the manufacture, sale, purchase, possession and transportation
of intoxicating liquor within the State, and subject to the laws of the
United States regulating commerce between foreign nations and among
the states shall have the exclusive right and power to regulate the im-
portation into and exportation from the State, of intoxicating liquor. . . .
The Legislature may authorize, subject to reasonable restrictions, the
sale in retail stores of liquor contained in the original packages, where
such liquor is not to be consumed on the premises where sold. . . ."

evils of unlicensed and unlawful manufacture, selling, and disposing of alcoholic beverages, and to promote temperance in the use and consumption of alcoholic beverages.'' (Alcoholic Beverage Control Act, § 1, now Bus. & Prof. Code, § 23001.)

The fact that the act provides for fair trade contracts indicates that its purposes include those of the general Fair Trade Act (Stats. 1931, ch. 278, p. 583, now Bus. & Prof. Code, §§ 16900-16905), particularly the prevention of price cutting in retail sales. (*Max Factor & Co.* v. *Kunsman*, 5 Cal. 2d 446, 455 [55 P.2d 177]; see *Wholesale Tobacco Dealers Bureau* v. *National etc. Co.*, 11 Cal.2d 634, 655 [82 P.2d 3, 118 A.L.R. 486].) The Max Factor and Wholesale Tobacco Dealers cases held that the Legislature may take measures against price cutting, and there can be no doubt that the prevention of intemperance is a proper legislative objective.

The means provided in a statute must be accepted as being reasonably designed to accomplish its objective unless it is unquestionable that they are improper. (*Wholesale Tobacco Dealers Bureau* v. *National etc. Co.*, 11 Cal.2d 634, 646 [82 P.2d 3, 118 A.L.R. 486]; *Miller* v. *Board of Public Works*, 195 Cal. 477, 490 [234 P. 381, 38 A.L.R. 1479].)

The legislative purpose of preventing price cutting and price wars among retailers is, of course, effectively attained under the fair trade provisions of the Alcoholic Beverage Control Act by having each producer or wholesaler establish the retail price of his own brand, and it was held in the Max Factor case (5 Cal.2d at p. 455) that the Legislature could reasonably proceed on the theory that the public will be adequately protected against excessive prices by the ordinary play of competition between manufacturers.

The statutory provisions also operate to remove some factors which may lead to intemperance because the elimination at the retail level of price cutting, bargain sales, and advertising of low prices tends to reduce excessive purchases of alcoholic beverages. It is true, as Allied points out, that there is nothing in the Alcoholic Beverage Control Act to prevent producers and wholesalers from setting low prices that may induce a large consumption of such beverages. It was not the purpose of the legislation, however, to reduce intemperance by establishing high prices generally but only by preventing the increase of consumption of alcoholic beverages resulting from retail price cutting and bargain sales, and the Legislature may take reasonable measures to eliminate some of the

causes of an evil without attacking all of them. (*Railway Express Agency* v. *New York*, 336 U.S. 106, 110 [69 S.Ct. 463, 93 L.Ed. 533].) The classification made by the Legislature in regulating retail prices without regulating wholesale prices is reasonable since the Legislature could properly conclude that competition among the relatively few producers and wholesalers would not result in disorderly marketing conditions but that price stabilization with respect to the far larger number of retailers, who sell directly to the consumers, was necessary to prevent selling practices tending to increase sales and consumption of alcoholic beverages.

 Allied contends that the fair trade provisions of the Alcoholic Beverage Control Act unlawfully delegate legislative power insofar as they provide that each producer and wholesaler must set the price at which retailers must sell his product. The question of unlawful delegation under the general Fair Trade Act was decided in *Scovill Mfg. Co.* v. *Skaggs etc. Drug Stores,* 45 Cal.2d 881 [291 P.2d 936], where prices set by a fair trade contract were held to be binding on a retailer who had not signed the contract. We there stated: "Here the acts of private parties in entering into contracts for the sale of commodities constitute the facts in contemplation of which the Legislature acted, and upon the existence of which the provisions of the enactment were to be applicable. The private contracts are no more legislative in character than are other acts or conduct of private parties undertaken as a prerequisite to the application of a statute. The consequence that the statute has become applicable, and conduct in violation thereof has become actionable, is in no way due to the exercise of any assumed legislative power on the part of the contracting parties. [Citation.] We conclude that there is no delegation of the legislative function in violation of constitutional prohibitions." (45 Cal.2d at p. 888.)

Whether the same conclusion applies to the provisions involved here depends upon whether the function performed by the persons who assertedly exercise delegated legislative powers is the same under the general Fair Trade Act and the Alcoholic Beverage Control Act. Under both statutes the function of such a person is to set the price of his own product on the basis of his personal interest, as affected by free competition in the market, and the result in each case is that all retailers, whether or not they have signed fair trade contracts, are bound by the prices set.

Although there are additional features in sections 55.6 and 55.65 of the Alcoholic Beverage Control Act that are not contained in the general Fair Trade Act, they do not warrant a different conclusion from the one reached in the Scovill case (45 Cal.2d 881, 888), namely, that there was no delegation of legislative power. One of the new features is that the Alcoholic Beverage Control Act requires, rather than permits, producers and wholesalers to set retail prices. This fact, however, does not render the function of a producer or wholesaler legislative in character but, to the contrary, decreases his discretion since he is not free to determine whether fair trading should occur. While mandatory fair trading means that retailers cannot obtain merchandise free from price restrictions, this is due to the determination of the Legislature, not the action of the producers and wholesalers.

A second difference is that, in addition to the civil remedies common to both statutes, the Alcoholic Beverage Control Act provides for administrative and criminal sanctions, but this aspect of the act does not involve any delegation of power, the sanctions being prescribed by the Legislature, not by the producers or wholesalers. The Legislature, of course, has power to provide for administrative sanctions with respect to a licensee who violates a regulation deemed to be in the public interest. We need not determine whether the criminal sanctions are proper since such penalties were not imposed in this case, and the provision authorizing them is severable.

The general Fair Trade Act, although designed in part to reduce cutthroat competition, is primarily intended to protect the property rights of producers and wholesalers (*Max Factor & Co.* v. *Kunsman,* 5 Cal.2d 446, 462 [55 P.2d 177]), whereas the primary purpose of the fair trade provisions of the Alcoholic Beverage Control Act is to promote orderly marketing conditions and temperance. This difference in primary purpose, however, has no significant bearing on the question of delegation of legislative power because it does not change the functions of the persons to whom a delegation is assertedly made. The producers and wholesalers of alcoholic beverages are not called upon to set the retail prices for their products on the basis of what will promote temperance and orderly marketing conditions, but, as we have seen, it is contemplated that, in setting prices, they will seek to promote their own business interests in the light of competition, which was also the case under the general Fair Trade Act,

and that they will thus indirectly carry out the purpose of the Legislature. Here, as in the Scovill case, the determinations to be made by the producers and wholesalers are not legislative in character but merely "the facts in contemplation of which the Legislature acted, and upon the existence of which the provisions of the enactment were to be applicable." (*Scovill Mfg. Co.* v. *Skaggs etc. Drug Stores,* 45 Cal.2d at p. 888.)

Upon the same reasoning as was used in the Scovill case, the Supreme Court of Connecticut decided that provisions which were substantially similar to those before us did not constitute an unlawful delegation of legislative power. (*Schwartz* v. *Kelly,* 140 Conn. 176 [99 A.2d 89, 93].) A similar statute was held invalid in *Scarborough* v. *Webb's Cut Rate Drug Co.,* 150 Fla. 754 [8 So.2d 913, 921], on the ground, among others, that it provided for an improper delegation of power, but the case is not persuasive because it contains no reasoning in support of this conclusion.

*State Board of Dry Cleaners* v. *Thrift-D-Lux Cleaners,* 40 Cal.2d 436 [254 P.2d 29], relied on by Allied, is distinguishable from the present case. The court there declared unconstitutional a statute which delegated to the State Board of Dry Cleaners the power to fix minimum price schedules. The principal ground of the decision was that the price-fixing provision could not be upheld as a proper exercise of the police power, but, as we have seen, the statutes involved here come within that power. The court also relied on the ground that there was a delegation of legislative power without ascertainable standards to an administrative board composed mainly of members of the industry who would participate in fixing prices to be charged by their competitors. The Thrift-D-Lux case does not hold that all types of price fixing are legislative in character, but that there was a delegation of legislative power under the special facts present in that case. On the other hand it was held in *Scovill Mfg. Co.* v. *Skaggs etc. Drug Stores, supra,* 45 Cal.2d 881, 887-888, that there was no delegation of legislative power where manufacturers, acting in their private capacity under the general Fair Trade Act, fixed the prices for which their own products were to be sold at retail by persons who were not their competitors. The distinguishing factor is that the dry cleaners' board was directed to fix uniform minimum prices for the services of all dry cleaners in limited areas on the basis of what it believed was

required by public health and safety, whereas under the general Fair Trade Act each manufacturer is to fix retail prices for his own products in accord with his personal interest. The functions of the producers and wholesalers under the Alcoholic Beverage Control Act, as we have seen, are the same as those of manufacturers under the general Fair Trade Act, and the controlling decision is *Scovill Mfg. Co.* v. *Skaggs etc. Drug Stores* rather than *State Board of Dry Cleaners* v. *Thrift-D-Lux Cleaners.*

The judgment is reversed.

Traynor, J., Spence, J., and White, J., concurred.

McCOMB, J.—I dissent. I would affirm the judgment for the reasons expressed by Mr. Justice Hanson in his dissenting opinion when the case was before the District Court of Appeal, (Cal.App.) 338 P.2d 1013, 1023.

PETERS, J.—I dissent.

In determining the sole question of law which is presented in this case the majority opinion holds that certain sections of the Alcoholic Beverage Control Act (specifically §§ 24750 through 24757 of the Business and Professions Code) constitute a valid and constitutional exercise of the police power. This determination is based upon the propositions that (a) the statutory provisions comprise a fair trade act applicable to alcoholic beverages, and (b) because the established law of this state holds Fair Trade Acts to be constitutional, this act is likewise constitutional. This reasoning is based upon the fallacious assumption that the provisions of the Alcoholic Beverage Control Act do, in fact, comprise a Fair Trade Act. I am of the opinion that the rules laid down in the Fair Trade cases (*Max Factor & Co.* v. *Kunsman*, 5 Cal.2d 446 [55 P.2d 177]; *Scovill Mfg. Co.* v. *Skaggs etc. Drug Stores*, 45 Cal.2d 881 [291 P.2d 936]) are inapplicable herein, and that this case must be determined in accordance with the rules set forth in *State Board of Dry Cleaners* v. *Thrift-D-Lux Cleaners,* 40 Cal.2d 436 [254 P.2d 29].[1]

There are basic distinctions between Fair Trade Acts and

---

[1]While this dissent is not intended as an attack upon the rules of the Factor and Scovill cases, it should be noted that the modern trend is to hold fair trade acts to be an unconstitutional exercise of the police power. When this court first held the California Fair Trade Act to be valid, it was joining the majority of jurisdictions in a determination made desirable, if not necessary, by reason of the then existing ''great depression.''

the provisions of the Alcoholic Beverage Control Act. These demonstrate that the constitutionality of one may not be predicated upon the other. Such distinctions are many and varied, and go to the very essence of the statutes. Reference to but four will serve to illustrate the point.

*Purpose*: Fair Trade Acts were designed to prevent the unsalutory effect of price war on the economy as it existed in a period of depression and low prices (1931). To accomplish this purpose they frankly and openly seek "to protect trade-mark owners, distributors and the public against injurious and uneconomic practices in the distribution of articles of standard quality under a distinguished trademark, brand or name" (*Max Factor & Co.* v. *Kunsman, supra*, at p. 454). In other words, the prime purpose of the Fair Trade Acts was to *promote trade*. In order to attain this objective the legislation fostered a system which would provide a floor to prices, and thus insure a profit. The fact that such price regulation also provided protection for the manufacturer's property right in his trade-marked articles was only incidental to the main purpose. On the other hand, the Alcoholic Beverage Control Act provides a system of setting minimum prices for the basic purpose of *reducing trade* in spirituous liquors. Under the heading of "Purposes" the act states that it is "an exercise of the police powers of the State . . . to eliminate the evils of unlicensed and unlawful manufacture, selling, and disposing of alcoholic beverages, and to promote temperance in

---

This court, together with the majority of states, held that the respective legislatures had a right to reverse their previously propounded economic theories in favor of a policy necessary to the times. Thus legislation was upheld which was otherwise inimicable to the federal anti-trust laws and to our own Cartwright Act (see *Max Factor & Co.* v. *Kunsman, supra*, at p. 455). In recent years, many states which had originally been included in the majority, have concluded that in times of high prices fair trade acts are not a legitimate exercise of police power, and have overruled their previous decisions. In this manner at least one case which was cited and relied on in previous California decisions is no longer the law of the jurisdiction which first propounded it. Thus *Borden Co.* v. *Schreder*, 182 Ore. 34 [185 P.2d 581], cited in *Scovill Mfg. Co.* v. *Skaggs, supra*, at p. 886, was overruled by *General Elec. Co.* v. *Wahle* (1956), 207 Ore. 302 [296 P.2d 635]. Cases from jurisdictions other than Oregon which have reversed their previously announced rule solely on the basis of changed economic conditions are: *Union Carbide & C. Co.* v. *Bargain Fair Inc.* (1958), 167 Ohio St. 182 [147 N.E.2d 481]; *Skaggs Drug Center* v. *General Elec. Co.* (1954), 63 N.M. 215 [315 P.2d 967]; *Tichenor Antiseptic Co.* v. *Schwegmann Bros.* (1956), 231 La. 51 [90 So.2d 343]; *Olin Mathieson Chem. Corp.* v. *Francis* (1956), 134 Colo. 160 [301 P.2d 139]; *General Elec. Co.* v. *A. Dandy Appliance Co.* (1958), (W. Va.) 103 S.E.2d 310.

the use and consumption'' thereof (Bus. & Prof. Code, § 23001). While it may be a price regulating statute, and appears to protect the distiller's property right in his trademarked goods, these matters are incidental to the purpose, which is antipathetical to the purpose of the Fair Trade Act. One act seeks to encourage sales, the other seeks to discourage them.

*Nature of the Contract*: Both the Fair Trade and the Alcoholic Beverage Control Acts are based upon the existence of a contract between producer and retailer, whereby the latter agrees not to sell at less than the price determined by the former. Here the similarity ends. The Fair Trade Acts are voluntary or consensual, in that neither party is required to enter into such a contract.[2] The Alcoholic Beverage Control Act is mandatory in that no spirits may be sold in California at retail except pursuant to such a contract (Bus. & Prof. Code, § 24755).

*The Penalty*: The penalties for a breach of the Fair Trade Acts are civil, only, giving to the injured party the right to damages or an injunction. The penalty for the breach of the price fixing regulations of the Alcoholic Beverage Control Act are both civil (Bus. & Prof. Code, § 24752) and penal, and the department may suspend or revoke licenses, or institute criminal action (see majority opinion).

*The Field Covered*: The Fair Trade Acts do not prevent a dealer who is dissatisfied with the prices set by a manufacturer from engaging in competition therewith. If he is unable to find a supplier of a competing article who will enter into a contract at a lower retail price, he may still deal in competing articles which are not fair-traded. Under the Alcoholic Beverage Control Act the retailer has no such alternative. He must deal exclusively in goods the price of which has been set by the distiller, or he must go out of business (Bus. & Prof. Code, § 24755).

It is not contended that the foregoing distinctions, of themselves, invalidate the Alcoholic Beverage Control Act. They are intended only to illustrate that there is a wide divergence between purpose, nature, penalty and coverage of the two acts. Because of such variance the Alcoholic Beverage Control Act

---

[2]The fact that once such a contract is executed other retailers coming into possession of the goods are bound by its terms, does not destroy the voluntary nature, for the conditions of the voluntary contract are deemed to follow the goods. A retailer who obtains goods directly from a producer, without contract, is not bound by any Fair Trade Act provisions.

must be analyzed individually, and its constitutionality determined without reference to the superficially similar (but basically dissimilar) Fair Trade Acts.

It is to be noted that the act itself, as quoted above, states that it is an exercise of the police power. No one can doubt that the subject matter (alcoholic beverages) is a proper field for the exercise of that power, even to the extent of legislating away the entire right to deal in intoxicating liquors. Nor can it be doubted that the expressed purpose of the act is entirely proper, and within the legislative function. I also agree with the majority opinion in its holding that the judiciary has neither the right nor the duty to question the wisdom of the legislative purpose. But at this point the majority opinion leaps a gap which I am unable to negotiate. After announcing that the courts may, and have a duty to, determine "whether the statute bears a reasonable and substantial relation to the object sought to be attained" (majority opinion, *ante*, pp. 146, 147)[3] the opinion merely discusses the authority to legislate. At no point does the opinion analyze the various provisions of this statute as they may be related to "the object sought to be attained." When so analyzed the provisions of the act which are here under attack must be found to have no reasonable relation to the expressed purpose. This being true, they admittedly fail to comprise a legitimate exercise of the police power.

As shown above, the stated purpose of the act is to "promote temperance in the use and consumption" of alcoholic beverages. But the sections here involved are restricted solely to a price fixing scheme. The only reason assigned (by both respondent and the majority) for the inclusion of these provisions is an assumed legislative purpose (not expressed in the act) to prevent "price wars" which would lead to unbridled purchases. While the provisions of sections 24750 et seq. may prevent "price wars" in the retail sale of any specific trade-marked brand, they do not prevent, or attempt to prevent, "price wars" between competing brands.[4] Neither

[3]Since the majority opinion cites authority for this proposition it is not necessary to lengthen this dissent with further citation.

[4]The Legislature was apparently so disinterested in the ultimate retail price of liquor that requirement of filing price lists with the board was confined to wholesale prices (Bus. & Prof. Code, § 24756). Ostensibly the department is not required to know the established retail price, which is left to the whim of the distiller, but which binds the retailer to both civil and penal sanctions.

do these provisions attempt to prevent "dumping" of excess stocks at preestablished low prices. In other words, the act protects the distiller in keeping his prices high, only if he wants them high. He may, under the act, set any price he may desire, high or low. He may enter into a price war with all of his competing distillers, so long as he files his wholesale price with the department and enters into a contract with the retailer. No attempt is made to regulate the wholesale price. The distiller may determine the same so long as he files. Such method of "control" of retail prices may promote one of the purposes of a fair trade act, that is to protect the owner of a trade-mark, but it bears no relationship to the promotion of temperance.

Another example of how the legislative provisions fail to accomplish their stated purpose is to be found in the language of section 24750. That section imposes the price fixing scheme upon an alcoholic beverage "which bears . . . the trade-mark, brand or name of the producer or owner . . . and which *is in fair and open competition with alcoholic beverages of the same general class produced by others."* (Emphasis added.) By adding the italicized clause, the Legislature has exempted any liquor which, although it be labeled with the owner's name, brand or trade-mark, is not in "fair and open competition." The majority has refused to take judicial notice of what goes on under this escape clause, and, for the purposes of this dissent, I will agree to that limited determination. But recourse to judicial notice is unnecessary in order to realize that trade in liquor is not confined to placing distilled liquor in bottles bearing the advertised labels of a well known distillery, and then shipping the same across a state line. Unlabeled barrels are also accepted by freight carriers, and we have no laws which prohibit their entry into California. Retailers are not prohibited from owning brands and trademarks, nor are they restrained from bottling on their own behalf. Thus the state may be (and were it not for the restrictions of judicial notice we might say, "is") legally flooded with "off-brands" which are not "in fair and open competition" with other advertised brands, and which may be (are?) sold at very low prices. This may be accomplished under the act by either retailer, wholesaler or distributor. It would seem that the public might be just as intemperate in the use and consumption of off-brands as it might on any of the better advertised brands.

To assume, as does the majority opinion, that the price regulating provisions may "operate to remove some factors which may lead to intemperance" without removing all such factors, is but begging the question. We have not been shown how, or in what manner, these sections can possibly accomplish any result other than increasing the value of a distiller's property right in and to its advertised trade-mark, while allowing him to enter into any and all manner of price wars with his unadvertised brands (or his same product bottled under another name). To hold otherwise is to close our eyes to facts of which we are entitled to take judicial notice; that is that the nationally published statistics show that in spite of the Alcoholic Beverage Control Act the consumption of liquor in California is on the increase, and the per capita consumption exceeds that of most other states.

For these reasons, it is clear that the price control features of the Alcoholic Beverage Control Act bear no reasonable relation to the stated purpose of the act. While this is a sufficient reason to hold those provisions to be an unjustified exercise of the police power, there is yet another, and perhaps more compelling reason to hold them invalid.

The price control provisions of the act give to the distiller the exclusive right and obligation of setting the retail price at which his product shall be sold in California (Bus. & Prof. Code, § 24750, as affected by § 24755). Nothing in the code gives the department, or any other official arm of the government, any voice or control in the establishment of such price. The price may be high or low, and need not bear any relationship to supply or demand, or to temperance. In fact, the department is not even to be advised of the retail price established, since only the wholesale price is required to be posted with that body. The result of this unique piece of legislation is a delegation of the legislative function of establishing price (in order to promote temperance), not to the Department of Alcoholic Beverage Control, but to private persons and to the very persons whose activities the act proposes to curtail. That such a delegation of legislative authority is contrary to section 1 of article III and section 1 of article IV of the California Constitution has long been established.[5] Although the limita-

---

[5]Section 1 of article III provides for the separation of the executive, legislative and judicial powers of this state, and prohibits any branch from delegating any portion of its authority to one of the other branches. Section 1 of article IV vests in the state Legislature the exclusive legislative function.

tion on delegation of authority has been interpreted to authorize legislative delegation to various administrative and civil boards, under certain situations and subject to specific safeguards (*Tarpey* v. *McClure*, 190 Cal. 593 [213 P. 983]), the attempt to delegate such authority to members of the public has never been condoned. In the case of *State Board of Dry Cleaners* v. *Thrift-D-Lux Cleaners*, 40 Cal.2d 436 [254 P.2d 29], this court had before it for consideration a statute which provided for the creation of a State Board of Dry Cleaners consisting of seven members; one from the general public; two owners of retail plants; two owners of wholesale plants; and two owners of shops. That act further provided that the board so established might set minimum price schedules for cleaning, dyeing and pressing services on petition of 75 per cent of the trade within any specific area, and further provided for injunctive relief for breach of such price schedules when established. This court held the statute unconstitutional on the ground, among others, that it was an attempt "to confer legislative authority upon those who are directly interested in the operation of the regulatory rule . . ." (*State Board of Dry Cleaners* v. *Thrift-D-Lux Cleaners, supra,* at p. 448). In that case, the persons to whom the legislative authority was conveyed at least had the color of an administrative board, but were held not to be such because of the requirement that the membership be composed of six members of the trade out of a total of seven. In the instant case, there is not even a disguised attempt to delegate to an administrative body. Such a board is created by the act, but the price fixing authority is given directly to the distiller. Clearly such attempted legislation comes within the rule of the Thrift-D-Lux case.

Moreover, the Alcoholic Beverage Control Act sets neither guide nor standard to aid those permitted to fix prices. Even if the legislative authority were delegated to the Department of Alcoholic Beverage Control, without such provision for standards, the price fixing portions of the statute would be unconstitutional (*Tarpey* v. *McClure*, 190 Cal. 593, *supra*; *Dominguez Land Corp.* v. *Daugherty*, 196 Cal. 468 [238 P. 703] ; *Agnew* v. *City of Culver City*, 147 Cal.App.2d 144, at pp. 153-154 [304 P.2d 788] ; *In re Petersen*, 51 Cal.2d 177, at p. 184 [331 P.2d 24] ; *State Board of Dry Cleaners* v. *Thrift-D-Lux Cleaners, supra,* 40 Cal.2d 436).

In the Tarpey case it is said, at page 600, that "the legislature may, without violating any rule or principle of the

constitution, confer upon an administrative officer a large measure of discretion, *provided the exercise thereof is controlled and guided by rules prescribed therefor.*'' (Emphasis added.)

In the Dominguez Land case the court was considering the propriety of a statute delegating authority to the Commissioner of Corporations. At page 484 it said, ''A familiar illustration is where the legislature enacts a law prescribing that the rates to be charged by a public utility shall be 'reasonable,' and creates a commission with power to investigate and fix the rates. If, however, no standard by which the officer is to be governed be prescribed by the lawmakers, then there is an attempt to entrust a mere administrative officer with the plenary power of the legislature.''

Since the act under scrutiny herein offers no guide of any kind to the persons given the obligation of setting prices, the price fixing portion of the statute is invalid. These features thereof are severable, and hence need not require invalidation of the entire act. The price fixing provisions come squarely within the following language (quoted from *Carter* v. *Carter Coal Co.*, 298 U.S. 238, 311 [56 S.Ct. 855, 80 L.Ed. 1160]) relied upon in the Thrift-D-Lux case, *supra* (p. 448) : ''a statute which attempts to confer such power undertakes an intolerable and unconstitutional interference with personal liberty and private property. The delegation is so clearly arbitrary, and so clearly a denial of rights safeguarded by the due process clause of the Fifth Amendment, that it is unnecessary to do more than refer to decisions of this court which foreclose the question.''

In my opinion, the judgment should be affirmed.

Schauer, J., concurred.