[L. A. No. 29584. In Bank. Oct. 21, 1969.]

SAMSON MARKET COMPANY, INC., Petitioner, v. ALCO-
HOLIC BEVERAGE CONTROL APPEALS BOARD
et al., Respondents; EDWARD J. KIRBY, as Director,
etc., Real Party in Interest.

1216

Leslie & Rubin and Lawrence Teplin for Petitioner.

Thomas C. Lynch, Attorney General, Henry G. Ullerich and L. Stephen Porter, Deputy Attorneys General, for Respondents and for Real Party in Interest.

MOSK, J.—We review a decision of the Alcoholic Beverage Control Appeals Board (board) which affirmed a decision of the Department of Alcoholic Beverage Control (department) revoking the retail off-sale general liquor license of Samson Market Company (licensee). (See Bus. & Prof. Code, § 23090, et seq.)[1]

On May 24, 1967, the department filed an amended accusation in two counts against the licensee doing business as Samson's, 6656 Sunset Boulevard, Los Angeles, charging in count I that on December 7, 1966, and in count II that on December 9, 1966, said licensee sold distilled spirits for a sum less than the effective minimum retail price of such beverages. After setting forth the licensee's record of prior violations, the accusation averred that by reason of the facts alleged grounds for the suspension or revocation of such license existed and

---

[1]Hereafter, unless otherwise indicated, all section references are to the Business and Professions Code.

that the continuance of such license would be contrary to public welfare and morals, as set forth in article XX, section 22, of the California Constitution and section 24200, subdivision (a), of the Business and Professions Code. It was also alleged that additional grounds for suspension or revocation existed under section 24200, subdivisions (a) and (b), in that the licensee had violated or permitted the violation of section 24755 and of rule 99 of the department's rules. (Cal. Admin. Code, tit. IV, § 99.)

In response to the amended accusation, the licensee filed a notice of defense asserting certain objections and affirmative defenses. After a hearing, the hearing officer issued his proposed decision finding that the charges of the amended accusation were true and recommending that the license be revoked on each count. The department adopted the proposed decision. The licensee appealed to the board which affirmed the department's decision. We thereafter issued a writ of review. The contentions the licensee raises require us to confront three broad issues: (1) the constitutionality of the retail price maintenance provisions of the Alcoholic Beverage Control Act (act); (2) the sufficiency of the publication of the minimum retail price schedules involved in the instant case; and (3) the constitutionality of section 24755.1, which, among other things, purports to prohibit revocation or suspension of a license for violation of such retail price maintenance provisions. We note that while the licensee makes the broad contention that "the findings are not supported by substantial evidence in the light of the whole record," its supporting argument is confined solely to the publication of the price schedules. The licensee does not challenge the findings that the sales were made by it on the dates and at the prices charged.

▮▮▮ As to the first issue, we have held on two distinct occasions that the retail price maintenance provisions of the act are constitutional. (*Wilke & Holzheiser, Inc.* v. *Department of Alcoholic Beverage Control* (1966) 65 Cal.2d 349 [55 Cal.Rptr. 23, 420 P.2d 735]; *Allied Properties* v. *Department of Alcoholic Beverage Control* (1959) 53 Cal.2d 141 [346 P.2d 737].)

In *Wilke & Holzheiser* we thoroughly reconsidered our initial holding to that effect so as "to foreclose any possibility that our silence might engender unwarranted speculation about the continued vitality of *Allied Properties*." (65 Cal.

2d at p. 357.) After such re-examination of the issue, we reaffirmed our conviction "that the price maintenance provisions do not transgress constitutional requirements . . . ." (*Id.*, at p. 355.) We do not feel compelled to essay a third review of the issue.

 We take this opportunity, however, to make one pertinent observation. Our holdings in *Allied Properties* and in *Wilke & Holzheiser* involved the provisions of section 24755 as they read prior to their amendment in 1961. Before such amendment, mandatory retail price maintenance of distilled spirits was effected through fair trade contracts fixing the resale price of alcoholic beverages which bore the trademark, brand, or name of the producer or owner and which were in fair and open competition with others of the same general class. (See § 24750, which is still in effect.) At that time section 24755 required all retail sales of distilled spirits to be made pursuant to fair trade contracts executed in accordance with chapter 10 of the act (§§ 24750-24757) and prohibited any violation of such contracts.

As amended in 1961, section 24755 provides that no package of distilled spirits shall be sold at retail unless a minimum retail price therefor shall have been filed with the department and that no off-sale licensee shall sell any such package at a price less than the effective filed price.[2] In short, after the 1961 amendment of section 24755 and corresponding revision of the department's rules, mandatory retail price maintenance of distilled spirits no longer required the negotiation and filing of a fair trade contract; nor is it required under the amended statute and rules that the brands of distilled spirits for which minimum retail price schedules are filed be in fair and open competition with others of the same general class.

The above described change in the mechanism of establishing retail prices for distilled spirits does not furnish support to the licensee's contention that the retail price maintenance provisions of the act as amended in and since 1961 constitute an unlawful delegation of legislative power and a "price-fixing" statute in conflict with section 1 of the Sherman Act. (15 U.S.C.A., § 1.) In a word, these changes do not impart merit to a constitutional challenge rejected by us in both *Al-*

---

[2] See section 24755, subdivisions (a) and (f). Prior to 1967 subdivision (f) was designated subdivision (e). For a detailed account of these changes in the statute and rules of the department, see *DeMartini* v. *Department of Alcoholic Beverage Control* (1963) 215 Cal.App.2d 787, 799-801 [30 Cal.Rptr. 668].

1220

*lied Properties* and *Wilke & Holzheiser* or compel us to modify our holding on the constitutionality of the retail price maintenance provisions in those cases. We there expressly rejected the contention that such provisions "unlawfully delegate legislative power by enabling each producer and wholesaler to set the price below which retailers may not sell his product." (*Wilke & Holzheiser, Inc.* v. *Department of Alcoholic Beverage Control* (1966) *supra*, 65 Cal.2d at p. 365.) We said in *Wilke & Holzheiser*: "To contend that the Alcoholic Beverage Control Act unlawfully delegates legislative power is to misconceive the nature of the power which is purportedly delegated. The power we analyze here finds expression in the private act of the producer in entering into a contract setting a price for the resale of his own brand. . . . To argue that the Alcoholic Beverage Control Act unlawfully delegates legislative power because it is a 'price-fixing act' is to overlook the crucial distinction between the fixing of a price for *all* products in a given market and the setting by the producer of the retail price at which *his own* product is to be sold." (Original italics.) (*Id.* at pp. 365-366.)

We conclude that it makes no difference that in both *Allied Properties* and *Wilke & Holzheiser* we dealt with retail prices established through fair trade contracts whereas under the statute (§ 24755) as amended in and since 1961, and applicable to the case before us, retail prices are established unilaterally by filing a minimum price schedule. ■ As the court said in *Reimel* v. *Alcoholic Bev. etc. Appeals Bd.* (1967) 256 Cal.App.2d 158, 173 [64 Cal.Rptr. 26]: "We cannot agree that the former requirement that a producer establish a minimum price for his product by securing a fair trade contract with at least *one* retailer before it became binding on all retailers was in substance or practical effect any different from the present section 24755 requirement that he unilaterally fix such a price. In each case the producer effectively sets the price for which his own product is to be sold. The competition between producers and their respective brands is not affected." (Original italics.) ■ ■ We reaffirm our holdings in *Allied Properties* and in *Wilke & Holzheiser* and further conclude that they have continued vitality in their application to the retail price maintenance provisions of the act as amended in and since 1961.[3] No new serious question

[3] Section 24755, as amended in 1961, required the filing with the department *and the publication* of a minimum retail price schedule for branded distilled spirits. The publication requirement was removed by amendment

has been raised concerning the constitutionality of the statutes involved.[4]

We next take up the question of the publication of the minimum retail price schedules involved in the instant case. The licensee asserts that in order to sustain the finding that it violated section 24755, the department must prove that the price schedules for the brand name whiskey were effective. It contends that in order for such schedules to be effective, the former provisions of section 24755, subdivision (b), required that (1) they be published in such a manner as to advise each retailer affected of the contents of such schedules, and (2) they be published prior to their effective dates. The licensee contends that the department has failed to prove these two elements and as such the finding that the licensee violated section 24755 cannot be sustained.

The evidence concerning publication of the price schedules involved herein consisted in part of the introduction of several pages from the December 1966 issue of Patterson's California Beverage Gazetteer (Patterson's) which showed the minimum retail prices to be those alleged in the accusation. In addition, certified copies of the "Distilled Spirits Minimum Retail Price Schedule" for each of the brands were introduced into evidence by the department.[5] The schedule for one

in 1967. We intend our observations on the constitutionality of the retail price maintenance provisions to cover section 24755 not only as it read at the time of the violations now before us when it contained requirements of filing and publication but also as it now reads as amended in 1967, without the requirement of publication.

[4]In connection with the licensee's challenge to the constitutionality of the minimum retail price provisions under the United States Constitution, we point out that the United States Supreme Court recently dismissed an appeal by the licensee "for want of a substantial federal question." (*Samson Market Co.* v. *Kirby* (1968) 393 U.S. 12 [21 L.Ed.2d 11, 89 S.Ct. 45].) The licensee has indicated that it presented the constitutional claims made herein to the Supreme Court in the case above cited.

It appears to us that there is authority for the proposition that a dismissal of an appeal for want of a substantial federal question is a decision on the merits and has value as precedent under the doctrine of *stare decisis*. (*Ohio* ex rel. *Eaton* v. *Price* (1959) 360 U.S. 246, 247 [3 L.Ed.2d 1200, 1202, 79 S.Ct. 978]; *Two Guys from Harrison-Allentown, Inc.* v. *McGinley* (E.D. Pa. 1959) 179 F.Supp. 944, 949 & fn. 4; see *People* v. *United Nat. Life Ins. Co.* (1967) 66 Cal.2d 577, 591 [59 Cal.Rptr. 599, 427 P.2d 199].) Thus, the dismissal by the United States Supreme Court indicates that no constitutional infirmity is to be found in the price maintenance provisions.

[5]The certification, made under oath by the acting administrative service officer to the Director of Alcoholic Beverage Control, states that such person is the "legal custodian of the distilled spirits minimum retail price schedules required by law to be filed with the Department . . ." and that the schedules so certified were "effective December 1966."

brand was filed with the department on June 15, 1966, to become effective on August 1, 1966, and the schedule for the other brand was filed on September 15, 1965, to become effective on November 1, 1965. Also introduced at the hearing was the testimony of Donna Barrie, the price listing editor of Patterson's. She testified that Patterson's was a trade magazine for the liquor industry published once a month and circulated in the eight southern counties; that complimentary copies were sent to new licensees for a period of three months and that only one percent failed to subscribe to Patterson's at the end of the three-month period; that Patterson's mailing list was obtained from the California Addressing Company; that the licensee was on the mailing list in December 1966; that she did not personally know whether all persons on the mailing list were holders of liquor licenses but that Mr. Meerson, the owner of the California Addressing Company, informed her that his firm obtained the names and addresses from the department in Sacramento and that they were those of licensees in the southern California trading area.

We held in *Kirby* v. *Alcoholic Bev. etc. Appeals Bd.,* *ante,* p. 1200 [81 Cal.Rptr. 241, 459 P.2d 657] that the court in *Reimel* v. *Alcoholic Bev. etc. Appeals Bd.* (1967) *supra,* 256 Cal.App.2d 158, was correct in its interpretation of the former requirements of section 24755, subdivision (b), which section required that minimum retail price schedules "be published in a manner which will result in each retailer affected . . . being advised of [their] contents . . . prior to [their] effective date[s] . . . ." *Reimel* held that such publication requirements were satisfied by publication "in a manner *most likely* to give notice to the affected licensees . . . ." (original italics) (256 Cal.App.2d at p. 169) and that former department rule 99(k) (Cal. Admin. Code, tit. 4, § 99(k)),[6] which allowed publication of minimum retail price schedules in a trade journal of general circulation, was a valid method of giving such notice. (*Id.* at p. 171.)

▮ Accordingly, the department need *not* prove that *each retailer affected* received notice of the minimum prices, as the licensee contends. If there is substantial evidence to show that the price schedules involved in the instant case were published in a trade journal of general circulation prior to the effective dates of such schedules, we are required to sustain

---

[6]Rule 99(k) was repealed by the department in 1967 (Register 67, No. 41) after the repeal of the publication requirements of section 24755, subdivision (b).

the findings of the department that those price schedules were effective.[7] As we have already indicated, no sale at retail of distilled spirits bearing the brand, trademark, or name of the owner thereof may be made unless a minimum retail price schedule is filed with the department pursuant to section 24755, subdivision (a). Both of the minimum retail price schedules received as evidence in this case were officially certified as those required by law to be filed with the department. (See fn. 5, *ante*.) Since the department is given the power to administer and enforce the liquor laws throughout the state (Cal. Const., art. XX, § 22; Bus. & Prof. Code, §§ 23049-23051), it is the duty of the department to administer and enforce the retail price maintenance provisions of the Alcoholic Beverage Control Act. (See *DeMartini* v. *Department of Alcoholic Beverage Control* (1963) *supra*, 215 Cal. App.2d 787, 808.) It must be presumed, therefore, that its "official duty has been regularly performed" (Evid. Code, § 664) and that the department, in certifying that the price schedules were effective in December 1966, satisfied itself they were published prior to their effective dates in a trade journal of general circulation as required by the former provisions of section 24755, subdivision (b), and former rule 99(k).

The effect of this presumption, which affects the burden of proof (Evid. Code, § 660), is to shift to the licensee the burden of proving that the department did not regularly perform its official duty in that it failed to ascertain whether the schedules had been properly published. (See Evid. Code, §§ 605, 606.) In this respect the licensee has failed to meet the burden of proof necessary to rebut the presumption.

---

[7]The Attorney General asserts that publication of the schedules is required only for the purpose of requiring that a retailer be advised of a price schedule prior to its effective date in order to prevent him from inadvertently making a sale at a price lower than the minimum. Based upon this assumption he contends that since the December 1966 issue of Patterson's was introduced into evidence before the department and since licensee's shelves were marked with the proper minimum retail prices, the purpose of the publication requirements were fulfilled by licensee's actual notice of the prices.

While this argument seems highly logical it does not appear to dispose of licensee's contention that the department must introduce proof of the time of publication in accordance with the mandatory provisions of former section 24755, subdivision (b), which stated that the person filing the schedule "*shall* cause" it to be published prior to its effective date. It appears that no violation of section 24755 may be shown without proof of such publication even if the licensee had actual notice.

Not only did the licensee fail to introduce any evidence whatsoever to show a lack of proper publication, but all inferences lead to the conclusion that the schedules were properly published. The record indicates that the licensee's shelves were marked with the correct minimum retail price indicating it had actual knowledge from some source of the effective price filed with the department. Further, the testimony of Mrs. Barrie indicates inferentially that Patterson's conformed with its customary business practice and published the minimum prices prior to their effective dates. All such evidence substantially supports the findings of the department that the minimum retail price schedules were published prior to their effective dates in a trade journal of general circulation in accordance with the former requirements of section 24755, subdivision (b).[8]

Finally, we turn to the question of the constitutionality of section 24755.1. The licensee's position is that this section provides that a license shall not be revoked or suspended for a violation of section 24755 and that the department exceeded its power by imposing such penalty in the instant case. Relying on the first sentence of the fifth paragraph of article XX, section 22, of the California Constitution, the licensee argues that the exclusive power of the department to license the sale of alcoholic beverages granted by that sentence "must therefore be tempered" in accordance with the laws enacted by the Legislature.

We held in *Kirby* v. *Alcoholic Bev. etc. Appeals Bd., ante,* at pp. 1201-1206, that the prohibition in section 24755.1 against license suspension or revocation is constitutional and properly qualifies the constitutional power to "license" granted the department by the fifth paragraph of section 22 of article XX. The licensee's argument that the section has vitality here must therefore prevail.

We conclude from the foregoing that although the department properly held that the licensee violated the minimum retail price maintenance provisions of section 24755, it improperly ordered revocation of the licensee's license contrary to the provisions of section 24755.1.

[8]We reject as irrelevant the licensee's contention that the only evidence that Patterson's was a trade journal of general circulation was the hearsay statement of Mr. Meerson to Mrs. Barrie. The presumption that the department regularly performed its official duty necessarily presumes that the schedules were properly published in a trade journal; the presumption is not evidence that such journal was Patterson's and therefore any hiatus in the proof as to the qualifications of Patterson's under

The decision of the department is reversed, and the matter is remanded for reconsideration of penalty within the limitations of section 24755.1 of the Business and Professions Code.

Traynor, C. J., McComb, J., Peters, J., and Burke, J., concurred.

SULLIVAN, J.—I concur in part and dissent in part.

I agree that the evidence substantially supports the findings of the Department that the minimum retail price schedules were published prior to their effective dates in a trade journal of general circulation in accordance with the former requirements of Business and Professions Code section 24755, subdivision (b). I also agree that the Department properly held that the licensee violated the retail price maintenance provisions of section 24755. But I disagree with the majority's conclusion that the purported prohibition in Business and Professions Code section 24755.1 against license suspension or revocation is constitutional and properly qualifies the power conferred upon the Department by article XX, section 22 of the Constitution to license, and to deny, suspend or revoke any specific license. Accordingly, I dissent from the majority's holding that the Department improperly ordered revocation.of the licensee's license contrary to the provisions of section 24755.1.

For the reasons stated in my concurring and dissenting opinion in *Kirby* v. *Alcoholic Bev. etc. Appeals Bd., ante,* p. 1200 [81 Cal.Rptr. 241, 459 P.2d 657], it is my opinion that the prohibition in section 24755.1 against license suspension or revocation is unconstitutional because it limits and impairs the constitutional power to suspend or revoke licenses granted the Department by the second sentence of the fifth paragraph of section 22 of article XX. I further conclude that since the provisions of section 24755.1 are clearly inseverable, the entire section is inoperative. The licensee's argument that the section has vitality here must therefore fall.

I would affirm the decision of the Department.

Tobriner, J., concurred.

Respondent's petition for a rehearing was denied November 19, 1969. Tobriner, J., and Sullivan, J., were of the opinion that the petition should be granted.