[S. F. No. 22622. In Bank. Oct. 21, 1969.]

EDWARD J. KIRBY, as Director, etc., Petitioner, v. ALCO-
HOLIC BEVERAGE CONTROL APPEALS BOARD,
Respondent; RICHARD CORSETTI, Real Party in
Interest.

Thomas C. Lynch, Attorney General, and L. Stephen Porter,
Deputy Attorney General, for Petitioner.

Leo K. Gallant for Respondent.

J. Bruce Fratis for Real Party in Interest.

MOSK, J.—This is a review of the decision of the Alcoholic
Beverage Control Appeals Board which reversed a decision
of the Department of Alcoholic Beverage Control ordering

revocation of a retail off-sale general liquor license. (Bus. & Prof. Code, § 23090 et seq.)

On November 23, 1966, an accusation was filed by the Department of Alcoholic Beverage Control (hereinafter department) against the retail off-sale general license of Richard Corsetti (hereinafter the licensee), doing business as "Dick's Fine Foods." The accusation alleged that the licensee made retail sales of distilled spirits on September 27, 1966, at prices less than those listed in the minimum retail price schedule duly filed with the department, in violation of Business and Professions Code section 24755 and California Administrative Code, title 4, rule 99(a).

Following a proceeding before a hearing officer of the Office of Administrative Procedure, a decision was proposed finding the allegations of the accusation to be true and recommending suspension of licensee's alcoholic beverage license for 15 days. The department rejected the proposed decision of the hearing officer and independently determined the case pursuant to Government Code section 11517, subdivision (c). The decision of the department, which issued on April 19, 1967, incorporated by reference the findings of fact and determination of the issues appearing in the proposed decision and ordered revocation of the license.

An appeal to the respondent Alcoholic Beverage Control Appeals Board (hereinafter appeals board) was filed by the licensee, and on July 12, 1967, the appeals board reversed the decision of the department. The appeals board found that the evidence in the record failed to establish publication of the minimum price schedule in compliance with the requirements of Business and Professions Code section 24755.[1]

We meet three questions on this review: (1) whether the publication of the minimum retail price schedule in a trade journal of general circulation in the licensee's trade area, pursuant to the former provisions of California Administrative Code, title 4, rule 99(k), satisfies the publication requirements of section 24755; (2) whether rule 99 and section 24755 are constitutionally valid; and (3) whether section 24755.1, precluding revocation of the licensee's alcoholic beverage license for violation of section 24755, is constitutionally valid.

The first two queries were recently answered in *Reimel* v. *Alcoholic Bev. etc. Appeals Bd.* (1967) 256 Cal.App.2d 158, 167-174 [64 Cal.Rptr. 26], hearing denied, in which it was

---

[1]Unless otherwise indicated, all statutory references are to the Business and Professions Code.

held that the subject mode of publication is proper and that rule 99 and section 24755 are constitutionally valid. (See also our discussion in *Samson Market Co. v. Alcoholic Bev. etc. Appeals Bd., post,* at pp. 1215-1221 [81 Cal.Rptr. 251, 459 P.2d 667].) The appeals board determined that the evidence in the present record failed to establish that there had been a proper publication of the minimum prices involved here. This determination, however, was based on prior decisions of the appeals board holding that as a matter of law the publication of the minimum retail prices for distilled spirits in a trade journal in general circulation in the trading area affected does not meet the statutory requirements. The court decided to the contrary on identical issues in *Reimel, supra.* Accordingly, we need not concern ourselves with the factual substantiality of the evidence, but hold that the publication is sufficient as a matter of law pursuant to *Reimel, supra.*

 The remaining question is the constitutionality of section 24755.1. That section, effective September 17, 1965, provides that violations of section 24755, which prohibits the retail sale of alcoholic beverages at less than the price contained in minimum retail price schedules filed with the department, shall be punished solely by monetary penalties, specifically providing that no criminal penalties shall be imposed and that no license shall be suspended or revoked for a violation of such section.[2]

It is contended that section 24755.1 infringes upon the powers granted to the department by article XX, section 22, of the California Constitution. Paragraph five of that section provides: "The Department of Alcoholic Beverage Control shall have the exclusive power, except as herein provided and *in accordance with laws enacted by the Legislature,* to license the manufacture, importation and sale of alcoholic beverages in this State, and to collect license fees or occupation taxes on account thereof. The department shall have the power, in its discretion, to deny, suspend or revoke any specific alcoholic beverage license if it shall determine for good cause that the

---

[2]Section 24755.1, in pertinent part, provides: "No criminal penalties shall be imposed on any licensee for a violation of the provisions of Section 24755 nor shall the license of a licensee be suspended or revoked for a violation of such section.

"The penalties imposed by the department for violations of such section shall be confined solely to monetary penalties for each violation committed during 36 consecutive months and shall be in the following amounts:

"For the first violation, two hundred fifty dollars ($250); for the second and subsequent violations, one thousand dollars ($1,000). . . ."

granting or continuance of such license would be contrary to public welfare or morals, or that a person seeking or holding a license has violated any law prohibiting conduct involving moral turpitude. . . ." (Italics added.)

Two possible interpretations of this paragraph have been suggested: either the two sentences quoted above are independent, and the department's power over "licensing" is qualified but its power over denial, suspension or revocation for defined cause is limitless and absolute; or the two sentences are interrelated and must be read together, so that the department's power over denial, suspension or revocation, like its power over "licensing" in general, is subject to reasonable legislative enactment. We conclude that the latter construction is correct.

The context of section 22 itself indicates the proper interpretation of paragraph five. The qualified power to "license" granted in the first sentence does not apply merely to the authority to issue licenses in the sense that a bureaucratic functionary delivers licenses over the counter. It necessarily encompasses the overall power to control licensing procedures. Thus the initial sentence of section 22, which sets out the general basis for the allocation of powers that follows, provides: "The State of California . . . shall have the exclusive right and power to *license* and regulate" manufacture, sale, etc., of alcoholic beverages. (Italics added.) This is obviously a declaration by the state that it shall have plenary power in the entire field of "licensing," subject only to superseding federal authority. The same power to "license" is then allocated or delegated to the department in the first sentence of paragraph five, all subject to qualification by legislative enactment. In addition, in paragraph five and elsewhere in section 22, where specific aspects of "licensing" are intended, specific terms are employed (e.g., ". . . if it shall determine for good cause that the *granting or continuance* of such license . . ."; "When any person aggrieved . . . appeals from a decision of the department ordering any penalty assessment, *issuing, denying, transferring, suspending or revoking* any license . . . .").

"Licensing," then, is the generic term—the whole—which includes within it numerous parts: "issuing, denying, transferring, suspending or revoking" of licenses. It is axiomatic that "The greater contains the less." (Civ. Code, § 3536.) When sentence one of paragraph five delegates to the Legislature control of the department's power over "licensing,"

that control extends to the entire field of licensing, including the aspects of denial, suspension and revocation specified in sentence two. The latter sentence simply states the terms and conditions under which the department, still subject to legislative enactment, shall exercise the negative aspects of that licensing power.[3]

Even apart from the clear language of the section, however, logic also compels the foregoing conclusion. It would seem incongruous for the state to give to the Legislature control over the power to "license"—i.e., the power to grant, deny, suspend or revoke—and then immediately deny or drastically limit its control over the latter three functions. Certainly a power to determine under what circumstances licenses shall be *granted* necessarily implies a determination under what circumstances licenses shall be *denied*. The department's contrary interpretation of paragraph five is tantamount to giving to one baseball umpire the power to call balls, and to another the power to call strikes. There would necessarily arise situations, such as that involved in the instant case, in which the Legislature determined circumstances in which to grant (or continue) a license, and the department determined to deny (or revoke) a license under identical conditions. If the department were to prevail, it would in effect be exercising a veto, an ultimate control, over the Legislature's power to regulate the issuance of licenses; yet section 22 clearly grants to the Legislature the superior power over licensing. It is far more consistent with state constitutional purposes to hold that in the case of a conflict the ultimate power rests with the Legislature by virtue of the broad language of sentence one.[4]

---

[3] The department insists that the two sentences of paragraph five are separate and distinct, and must therefore be read independently. However, the original version of section 22, before amendment into its present form, contained the same language as the present paragraph five, without the clause regarding legislative enactment, but in *one sentence*: "The State Board of Equalization shall have the exclusive power to license the manufacture, importation and sale of intoxicating liquors in this state, or to collect license fees or occupation taxes on account thereof *and shall have the power*, in its discretion, to deny or revoke . . . ." (Italics added.) The sentence was grammatically divided in 1954, when verbiage was added and the text became cumbersome; but the original language was retained, with no indication that the power to deny or revoke in the second part of the original sentence was thereafter to be severed from and made wholly independent of the overall power to "license" referred to in the first part of that original sentence.

[4] It is significant, in the area of administrative interpretation, to note the statement of the former Director of the Department of Alcoholic Beverage Control, Russell S. Munro, in response to a legislative attempt to eliminate entirely the language in sentence two of paragraph five regarding departmental discretion and replace it with absolute depen-

(Cf. *Harris* v. *Alcoholic Bev. etc. Appeals Bd.* (1964) 228 Cal.App.2d 1, 7 [39 Cal.Rptr. 192].)

We do not suggest that the Legislature may eliminate or tamper at will with the power of the department to deny, suspend or revoke licenses or to exercise its constitutionally granted discretion in that regard. The department itself, in its earlier administrative construction (see fn. 4, *ante*), properly assessed the Legislature's task under section 22 as the reasonable control, not the elimination of the department's discretion.

The department now contends that even if section 24755.1 does not unconstitutionally limit its powers under section 22, it unconstitutionally *extends* those powers by adding the authority to impose mandatory fines for violation of section 24755. (Cf. *Wilke & Holzheiser, Inc.* v. *Department of Alcoholic Beverage Control* (1966) 65 Cal.2d 349. 371 [55 Cal. Rptr. 23, 420 P.2d 735].) The language of section 22 does not support this objection. Not only is the department granted exclusive jurisdiction over the field of "licensing," but paragraph seven of section 22 provides for appeal "from a decision of the department ordering *any penalty assessment,* issuing, denying, transferring, suspending or revoking any license . . . ." (Italics added.) As we have explained, however, these powers of the department are subject to legislative control. The Legislature is therefore authorized by section 22 to add mandatory fines as penalty assessments for violations of alcoholic beverage control laws.

In short, the Constitution grants the authority to license exclusively to the Department of Alcoholic Beverage Control, except as qualified by appropriate legislative enactment. We

dence on legislative enactment. After reviewing some of the many statutes which set out and regulate the penalties for various liquor law violations (e.g., Bus. & Prof. Code, §§ 24200.5, 24205, 24880, 25010), Mr. Munro stated his opposition to the proposed amendment as follows:

"The department does not contend that the foregoing statutes, or others limiting its discretion are unconstitutional or ineffective. The appellate courts have held that the Legislature has plenary power to regulate the alcoholic beverage industry and to limit the discretion of the enforcement agency. The department has no quarrel with those decisions. Our objection is not to the control of discretion. We do object to the elimination of discretion." (Appendix to Journal of Senate (1959 Reg. Sess.) Vol. 1, Rep. of Senate Interim Com. on Alcoholic Beverage Industry, pp. 15-16.)

Of course, the very existence of the above statutes regulating penalties for liquor law violations, being an implicit assertion by the Legislature that it has the constitutional power to control departmental discretion, "is of very persuasive significance." (*Delaney* v. *Lowery* (1944) 25 Cal.2d 561, 569 [154 P.2d 674].)

conclude that the Legislature has not exceeded its power by enactment of section 24755.1, which qualifies the department's jurisdiction over licensing in cases involving the Legislature's minimum price statute. Since it appears there would have been no violation, and thus no grounds for discipline, had there been no legislatively enacted minimum price statute in existence, the circumstances of the instant case demonstrate this subject to be a particularly appropriate area for the exercise of legislative control over departmental discretion.

The decision of the department is reversed, and the matter is remanded for reconsideration of penalty within the limitations of section 24755.1 of the Business and Professions Code.

Traynor, C. J., McComb, J., Peters, J., and Burke, J., concurred.

SULLIVAN, J.—I concur in part and dissent in part.

While I agree with the majority's determination that the mode of publication of the minimum retail price schedule was proper and that the Department's former rule 99(k) and Business and Professions Code section 24755[1] are constitutionally valid, I am unable to concur in their holding that section 24755.1 does not infringe upon the powers vested in the Department by article XX, section 22 of the Constitution. In short, I agree with the majority on the first two questions confronting us on this review (see ante, p. 1201), but disagree with them on the third. But the first two questions never posed any great or complex problems for this court, had apparently been convincingly resolved on intermediate review,[2] and, as appears, have been disposed of here by the majority with appropriate succinctness. It is the third question, involving the constitutionality of section 24755.1 which is the crucial one in this case.

Article XX, section 22 of the California Constitution provides the basic scheme for the regulation of the manufacture, sale, purchase, possession and transportation of alcoholic beverages within this state. This section, confirming to the state

[1]Hereafter, unless otherwise indicated, all section references are to the Business and Professions Code except for citation to section 22 of the Constitution.

[2]When this case was before it, the Court of Appeal, First Appellate District, Division One, in an opinion prepared by Presiding Justice Molinari and concurred in by Justice Elkington, held (as do the majority herein) that the first two questions had been answered by their earlier opinion in *Reimel* v. *Alcoholic Bev. etc. Appeals Bd.* (1967) 256 Cal.App. 2d 158 [64 Cal.Rptr. 26], appeal dismissed 393 U.S. 7 [21 L.Ed.2d 9, 89 S.Ct. 44].

the full police power in the field of alcoholic beverage control subject only to superior federal laws, in its fourth paragraph establishes the Department as the agency to effectuate the constitutional objectives and, in its fifth paragraph, invests such agency with wide discretionary powers over the licensing of the manufacture, importation and sale of alcoholic beverages.

The fifth paragraph, which is the focal point of our inquiry, reads: "The Department of Alcoholic Beverage Control shall have the exclusive power, except as herein provided and in accordance with laws enacted by the Legislature, to license the manufacture, importation and sale of alcoholic beverages in this State, and to collect license fees or occupation taxes on account thereof. The department shall have the power, in its discretion, to deny, suspend or revoke any specific alcoholic beverage license if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals, or that a person seeking or holding a license has violated any law prohibiting conduct involving moral turpitude. It shall be unlawful for any person other than a licensee of said department to manufacture, import or sell alcoholic beverages in this State." .

The thesis of the majority opinion is that the first and second sentences of the fifth paragraph are interrelated and that the Department's power to deny, suspend or revoke any specific license found in the second sentence, like its general power to license found in the first sentence, is "subject to reasonable legislative enactment." Unfortunately, the majority rest this analysis upon the unsound and gratuitous premise that the Constitution has invested both the Department and the Legislature with control of alcoholic beverages and expound it according to the easy formula of merely harmonizing the respective powers of each. Thus, the majority, although recognizing that the Constitution in the second sentence vests discretion in the Department, nevertheless hold that the first sentence "delegates to the Legislature control of the department's power over 'licensing,' [and that] that control extends to the entire field of licensing, including the aspects of denial, suspension and revocation specified in sentence two." (*Ante*, pp. 1203-1204.) Section 22 nowhere "delegates" any control to the Legislature which would enable that body to interfere with the constitutional power vested in the Department to exercise its discretion in determining whether a license should be issued, denied, suspended or revoked.

The only limitation upon the exercise by the Department of its otherwise unfettered discretion is found in the second sentence of the fifth paragraph of section 22 which requires that the Department's determination be "for good cause," that is to say "based on sufficient evidence and that it should not act arbitrarily. . . ." (*Martin* v. *Alcoholic Bev. etc. Appeals Bd.* (1961) 55 Cal.2d 867, 876 [13 Cal.Rptr. 513, 362 P.2d 337]; see *Martin* v. *Alcoholic Bev. etc. Appeals Bd.* (1959) 52 Cal.2d 238, 248 [340 P.2d 1].)

Fully expounded—and exposed—the rationale of the majority boils down to this: the licensing power conferred on the Department in the *first sentence* must necessarily embrace all its aspects, that is, the issuance, denial, transfer, suspension and revocation of licenses; the *first sentence* "delegates" to the Legislature control over the Department's licensing power which control, extending to the "entire field of licensing" (*ante*, p. 1204), must necessarily cover all its aspects, including the denial, suspension and revocation of licenses specified in the *second sentence;* since "section 22 clearly grants to the Legislature the *superior* power over licensing" (*ante*, p. 1204; italics added), it is that body which is vested with paramount power not only with respect to the issuance of a new license but with respect to disciplinary action against an existing one. It is obvious that this argument is spun out and its conclusion reached only on the majority's unarticulated assumption that the phrase "in accordance with laws enacted by the Legislature" (found in the first sentence) permits the enactment of any law which is otherwise within the police power without regard to whether it infringes upon the grant of discretion to the Department. I suggest that this assumption is the fatal error in the majority's reasoning.

Section 22 provides (in the next to the last paragraph) that "[t]he provisions of this section shall be self-executing, but nothing herein shall prohibit the Legislature from enacting laws *implementing* and *not inconsistent* with such provisions." (Italics added.) This provision expresses the settled principle affecting self-executing provisions of the Constitution that "the Legislature can adopt reasonable procedural requirements for the enforcement of such constitutional right, [but] it can do nothing which would unreasonably curtail or impair it." (*Vinnicombe* v. *State of California* (1959) 172 Cal.App.2d 54, 56 [341 P.2d 705]; see *Rose* v. *State of California* (1942) 19 Cal.2d 713, 725 [123 P.2d 505]; *Chesney* v. *Byram* (1940) 15 Cal.2d 460, 462-463 [101 P.2d 1106].) In

other words, it prescribes the type of laws which the Legislature may enact pursuant to the authorization contained in the first sentence of the fifth paragraph, namely, laws which will not ''unreasonably curtail or impair'' the Department's constitutional power. The Legislature may implement the Department's power but it may not take action which is inconsistent with it. To borrow the language of *Rose, supra,* ''it is . . . elementary that the legislature by statutory enactment may not abrogate or deny a right granted by the Constitution.'' (19 Cal.2d at p. 725.)

Ignoring both the above provision of the Constitution[3] and the principle of constitutional law therein expressed, the majority, in order to justify the enactment of section 24755.1 here at the center of the controversy, merely make the assertion that section 22 clearly grants to the Legislature the superior power over the suspension and revocation as well as the issuance of licenses. Having taken this hurdle, the majority not surprisingly find a clear course ahead, since the conclusion they reach is already fully contained in the assumption which they make at the start.

The plain fact of the matter is that section 22 does not in any way confer on the Legislature a power superior to that conferred on the Department. This is quite apparent when one examines the fifth paragraph which sets forth the powers and duties of the Department. The first sentence confers on the Department the power, exclusive of any other state department or agency and exclusive of the Legislature, to license the manufacture, importation and sale of alcoholic beverages in this state, although it must do so in accordance with laws enacted by the Legislature. However, the second sentence gives to the Department the power, ''in its *discretion,* to deny, suspend or revoke any *specific* alcoholic beverage license if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals, or that a person seeking or holding a license has violated any law prohibiting conduct involving moral turpitude.'' The second sentence thus provides substantive standards to govern the Department's action. But section 22 clearly indicates that the discretion to act is vested in the Department, not in the Legislature, and the latter may not interfere with the Department's exercise of its discretion. To hold otherwise, as do the majority, is to disregard totally the

---

[3]The majority opinion makes no mention of the next to the last paragraph of section 22.

express grant of discretion to the Department and in effect to render the grant meaningless.

It is a settled constructional rule that in the interpretation of particular words, phrases, or clauses in a constitution, "the entire substance of the instrument or of that portion thereof which has relation to the subject under review should be looked to in order to determine the scope and purpose of the particular provision therein of which such words, phrases, or clauses form a part; and in order also to determine the particular intent of the framers of the instrument in that portion thereof wherein such words, phrases, or clauses appear." (*Wallace* v. *Payne* (1925) 197 Cal. 539, 544 [241 P. 879].) This rule is totally ignored by the majority opinion which simply fails to take cognizance of the whole of section 22, the context in which the specific provisions here in issue must be analyzed. The majority disclaim any suggestion "that the Legislature may eliminate or tamper at will with the power of the department to deny, suspend or revoke licenses or to exercise its constitutionally granted discretion in that regard," (*ante*, p. 1205). Nevertheless their holding in the instant case that the Legislature through the enactment of section 24755.1 can prevent the Department from suspending or revoking a specific license for a violation of section 24755 (in the instant case retail sales of distilled spirits at prices less than those listed in the minimum retail price schedule), in fact destroys in such circumstances the Department's constitutional power, in its discretion, to suspend or revoke such license "if *it* shall determine for good cause that the . . . continuance of such license would be contrary to public welfare or morals. . . ." (Cal. Const., art. XX, § 22.) (Italics added.)

In the light of *all* of the provisions of section 22 and in particular of the fifth paragraph, the proper function of the Legislature with respect to the Department's discretionary power is to enact laws which do not infringe upon or curtail that power but rather outline the procedural framework or provide the auxiliary requirements within which the full power can operate. Thus, the Legislature may enact laws prescribing the types of licenses which the Department may issue (see §§ 23320-23455), the requirements of applications for licenses (see §§ 23950-23988), the steps to be taken by the Department in disciplining licensees (see §§ 24011-24016; §§ 24200-24301), and other nonsubstantive, administrative and procedural regulations which implement but are not inconsistent with, the constitutional powers of the Department.

(See, e.g., §§ 24040-24080 (issuance and transfer of licenses) ; §§ 25170-25238 (labels and containers).)

Since any interpretation similar to that advanced by the majority would render nugatory the provisions of the second sentence which vest discretion in the Department, we have an obligation to construe the provisions of section 22 so as to give "full force and effect . . . to every portion thereof." (*People* v. *Zolotoff* (1941) 48 Cal.App.2d 360, 364 [119 P.2d 745] ; see *Crowe* v. *Boyle* (1920) 184 Cal. 117, 129 [193 P. 111].) Nevertheless, the "superior" power which the majority would ascribe to the Legislature by virtue of the first sentence of the fifth paragraph and which they would thereafter extend over the entire field of licensing delineated in the *second* sentence as well as the *first,* would of necessity be repugnant to the discretionary power clearly granted to the Department in the *second* sentence. To say that the power of the Legislature is "superior" is to say at the same time that the power of the Department is subordinate. On the contrary, I think it is quite clear that the specific provisions of the second sentence are to control over the more generalized provisions of the first sentence (*People* v. *Western Air Lines, Inc.* (1954) 42 Cal.2d 621, 637 [268 P.2d 723] ), to the end that the discretion remains in the Department to deny, suspend or revoke any specific license "if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals, or that a person seeking or holding a license has violated any law prohibiting conduct involving moral turpitude." Thus, contrary to the majority's contention, the Legislature does not have "the superior power over licensing." (*Ante,* p. 1204.)

The Legislature itself has recognized that discretion in all phases of licensing is vested in the Department and that the former's only power is to issue guides, not directives. Thus, in section 23044 "license" is defined as a "license authorized to be issued *by the department* pursuant to this division." (Italics added.) In section 23958 the Department is to make an investigation "to determine whether the applicant and the premises for which a license is applied qualify for a license. . . ." Indeed in prescribing the grounds for suspension or revocation of licenses in section 24200, the basic enforcement section, the Legislature has done no more than provide standards for the exercise of the Department's constitutional powers. Rather than providing that the Department *shall* revoke or suspend a license in specified situations the

section merely declares that "The following are the grounds which constitute a basis for the suspension or the revocation of licenses." It is of special significance that in setting forth the first statutory ground[4] the Legislature has taken pains to add "but proceedings under this section upon this ground are not a limitation upon the department's authority to proceed under Article XX, Section 22, of the Constitution." Finally, in section 24201 it is provided that accusation must be in writing "and shall state one or more grounds which would authorize *the department* to suspend or revoke the license. . . ." (Italics added.)

In a footnote (*ante*, pp. 1204-1205, fn. 4) the majority make tangential reference to sections 24200.5, 24205, 24880 and 25010. The point of the reference seems to be that a former director of the Department in making certain observations as to proposed changes in the second sentence of the fifth paragraph stated that "The Department does not contend that the foregoing statutes [i.e. the four sections noted above], or *others* limiting its discretion are unconstitutional or ineffective." (Italics added.) A sequential point sought to be made in the footnote is that "the very existence of the above statutes [constitutes] an implicit assertion by the Legislature that it has the constitutional power to control departmental discretion. . . ." In the first place the statement or contention of a former director of the Department cannot operate as a waiver of the invalidity of a statute, much less bind this court in resolving the issue of the constitutionality of a statute (§ 24755.1) now presented to us. Furthermore the fact that other sections of the Alcoholic Beverage Control Act (Act) may also offend the constitutional scheme of control cannot be a determinant of the constitutionality of section 24755.1, the statute challenged on this review. In fact, as I have already pointed out, the principal section dealing with the suspension and revocation of licenses, namely section 24200 takes pains to make clear that no limitation of the Department's constitutional authority is intended. The majority offer no analysis of the four sections mentioned above; under the circumstances, I do not feel constrained to do so. We are not called upon to pass upon their constitutionality in this case; our sole responsibility is to pass upon the validity of section 24755.1.

Accordingly, I cannot agree with the majority's interpretation of section 22 of the Constitution. As I analyze its provi-

---

[4] "When the continuance of a license would be contrary to public welfare or morals"; (§ 24200, subd. (a)).

sions, the section means that the Department has been granted the discretionary power to deny, suspend or revoke any license upon the grounds therein specified and that although the Legislature may adopt reasonable procedural or similar auxiliary requirements for the enforcement of such power, "it can do nothing which would unreasonably curtail or impair it." (*Vinnicombe* v. *State of California, supra,* 172 Cal.App. 2d 54, 56.)

Section 24755.1 by its express terms prohibits the Department from suspending or revoking a license for a violation of section 24755, that is for sales below the effective minimum retail prices, and ordains that "penalties imposed by the department for violations of such section shall be *confined solely* to monetary penalties. . . ." (§ 24755.1, italics added.) In the light of my interpretation of the relevant constitutional provisions, I am convinced that section 24755.1 is unconstitional to the extent that it curtails, indeed I would say abolishes, the Department's power to suspend or revoke licenses in these circumstances.

Less than three years ago in *Wilke & Holzheiser, Inc.* v. *Department of Alcoholic Beverage Control* (1966) 65 Cal.2d 349 [55 Cal.Rptr. 23, 420 P.2d 735], we reaffirmed our earlier holding in *Allied Properties* v. *Department of Alcoholic Beverage Control* (1959) 53 Cal.2d 141 [346 P.2d 737], and after referring to the pertinent statutory provisions of the Act,[5] we held that the "declared purposes of the Alcoholic Beverage Control Act in general and of its retail price maintenance provisions in particular" were entirely legitimate and bore a reasonable relationship to those purposes. (65 Cal.2d at p. 360.) We concluded that retail price maintenance might well

---

[5] We observed: "The Legislature adopted the Alcoholic Beverage Control Act 'for the protection of the safety, welfare, health, peace, and morals of the people of the State, to eliminate the evils of unlicensed and unlawful manufacture, selling, and disposing of alcoholic beverages, and to promote temperance in the use and consumption of alcoholic beverages.' (Bus. & Prof. Code, § 23001.) With regard to the retail price maintenance provisions specifically, the Legislature made its purpose plain: 'It is the declared policy of the State that it is necessary to regulate and control the manufacture, sale, and distribution of alcoholic beverages . . . for the purpose of fostering and promoting temperance in their consumption and respect for and obedience to the law. In order to eliminate price wars which unduly stimulate the sale and consumption of alcoholic beverages and disrupt the orderly sale and distribution thereof, it is hereby declared as the policy of this State that the sale of alcoholic beverages should be subjected to certain restrictions and regulations. The necessity for the enactment of provisions of this chapter is, therefore, declared as a matter of legislative determination.' (Bus. & Prof. Code, § 24749.)'" (65 Cal.2d at p. 360.)

promote temperance and that therefore the provisions of the Act effectuating it were for the protection of the public welfare. (See 65 Cal.2d at pp. 360-361.) In light of this determination, price-cutting indisputably must be held to be conduct which is contrary to public welfare and therefore for such conduct the Constitution permits the Department to revoke or suspend a license. Thus section 24755.1 insofar as it prohibits the Department from suspending or revoking a license for violation of section 24755, is an unconstitutional limitation upon the discretion vested in the Department by the provisions of article XX, section 22. Although I agree that section 24755.1 is not an unlawful *extension* of the Department's power insofar as it adds the power to impose monetary penalties for the violation of section 24755, nevertheless as we pointed out in *Wilke & Holzheiser, Inc.* v. *Department of Alcoholic Beverage Control, supra,* 65 Cal.2d 349, 371, fn. 18, "the provisions of section 24755.1 are clearly inseverable," and it must necessarily follow that the entire section is invalid.

There is substantial evidence that violation of section 24755 occurred and the Department has rationally concluded that such conduct is contrary to public welfare or morals.

I would affirm the decision of the Department.

Tobriner, J., concurred.

Respondent's petition for a rehearing was denied November 19, 1969. Tobriner, J., and Sullivan, J., were of the opinion that the petition should be granted.